CHARLES YOUNGBLOOD v. NORTH STATE FORD TRUCK SALES AND LIBERTY MUTUAL INSURANCE COMPANY

No. 8610IC1243

(Filed 1 September 1987)

**Master and Servant § 49.1— workers' compensation—teaching defendant's employees how to use equipment—employee of defendant**

Plaintiff was an employee of defendant rather than an independent contractor when he was injured while teaching defendant's employees how to straighten damaged truck frames with Kansas Jack equipment where plaintiff sold Kansas Jack equipment on a commission basis in the Atlanta, Georgia area and sometimes taught the buyers' employees how to use the equipment; plaintiff agreed to instruct defendant's employees in the use of Kansas Jack equipment for $250 per day plus expenses for four or five days, as defendant thought their progress required; plaintiff was told by defendant when to begin and stop work and when to break for lunch; and plaintiff was told which trucks to use in instructing defendant's employees and to begin "hands-on" training at a certain point.

Judge GREENE dissenting.

APPEAL by defendants from the Opinion and Award of the North Carolina Industrial Commission filed 11 August 1986. Heard in the Court of Appeals 9 April 1987.

On 23 July 1984, while instructing employees of defendant North State Ford Truck Sales in Raleigh, N.C. how to straighten damaged truck frames with machinery manufactured by the Kansas Jack Equipment Company, plaintiff was seriously and perma-

nently injured when one of the chains used in his demonstration snapped and struck him in the neck. His claim for workers' compensation benefits was heard under a stipulation limiting the issue to whether at the time of the accident plaintiff was an employee of defendant North State Ford Truck Sales under the N.C. Workers' Compensation Act. At the hearing testimony and exhibits to the following effect were received into evidence:

During the ten years before the fall of 1983 plaintiff had operated his own truck repair shop in Lilburn, Georgia where he became familiar with the use of Kansas Jack equipment. In the fall of 1983 he became an independent sales agent for Interstate Marketing Corporation of Nashville, Tennessee and in that capacity sold Kansas Jack equipment on a commission basis in a sixteen county area around Atlanta, Georgia. He received no benefits or salary from Interstate Marketing and was free to sell other types of equipment or merchandise, but Interstate did furnish him a van, with a Kansas Jack logo on its sides for advertising purposes, that he was free to use as he saw fit. Plaintiff worked directly for Interstate only on one occasion when it hired him at the rate of $250 a day to teach employees of one of its customers how to use Kansas Jack equipment. In July, 1984 North State Ford wanted to get its employees trained in the use of some Kansas Jack equipment that it had; the available alternatives were to send the employees to classes conducted by the equipment manufacturer in Kansas, which was too expensive, or have an instructor come to North State's site in Raleigh. In searching for an available instructor North State contacted Kansas Jack's Knoxville, Tennessee representative, who put them in touch with plaintiff. After much discussion plaintiff agreed to come to Raleigh and instruct defendant's employees in the use of Kansas Jack equipment for $250 per day plus expenses. Under the agreement plaintiff was to instruct the employees for four or five days, as North State thought their progress required, between the hours of 7:30 a.m. and 4:30 p.m. with an hour off for lunch at noon. On the morning of 23 July plaintiff arrived at defendant's facility and the body shop manager, Alan Chapman, had the employees place all the Kansas Jack equipment out on the floor, along with the trucks that were to be repaired during the instruction process. According to plaintiff Chapman told him to teach the employees how to use "frame gauges" that morning, which he did, and in the after-

noon Chapman told him to do some "hands-on training." That afternoon while plaintiff and the North State trainees were straightening a truck frame the accident occurred and plaintiff was injured. The carrier paid plaintiff for one day's work plus his travelling expenses, but declined to pay either his medical expenses, which amount to approximately $300,000, or any disability compensation.

Following the hearing Deputy Commissioner Page, in addition to finding facts substantially in accord with the above, found that at the time of the accident plaintiff was "an independent sales representative for Interstate Marketing Corporation"; that he set his own price for instructing North State's employees; that he arrived at North State driving a van "owned by IMC which had the Kansas Jack name and trademark" on it; that he was not required to sign any North State Ford employment forms; that North State did not provide him with a copy of its employee handbook before he began work and was not required to withhold any tax from his pay; that the plaintiff "has established his reputation as having an independent calling" to teach the use of Kansas Jack equipment; and that while the "defendant had the right to require certain results from the plaintiff . . . [it] did not have any control or right of control over the plaintiff's teaching methods." Based upon those and other findings Deputy Commissioner Page concluded that at the time of plaintiff's injury he was not an employee of North State but was an independent contractor and denied his claim for benefits under our Workers' Compensation Act.

Upon plaintiff appealing the Full Commission found additional facts to the effect that: It was agreed that North State could stop the instruction whenever it appeared that the trainees had learned how to use the equipment; that plaintiff was to be paid on a daily basis and was told to work the normal schedule of other body shop employees, who had an hour off for lunch from noon until 1 p.m.; that he would be allowed to quit work at 4:30 p.m. when the other workers normally quit for the day; that Chapman was not "willing to pay either plaintiff or the other employees for overtime work"; that Chapman directed plaintiff to repair particular trucks during the instruction process; that Chapman "checked on the progress being made by plaintiff and the other employees" and instructed plaintiff to give the employees

"hands-on" training during the afternoon of 23 July, which he did; and that it was during the "hands-on" training that the chain snapped and injured him. The Commission also found that "even though North State Ford hired [plaintiff] to teach its employees because of his skill and expertise, North State Ford retained the right to control the details of plaintiff's work by setting his hours of work, choosing the dates on which he was to work, providing all materials and assistance which he needed, paying him on a time basis, checking the progress of his work, and retaining the right to fire him at any time [and] North State Ford also retained the right to control the progress of plaintiff's work through its right to stop, delay or otherwise interfere with plaintiff's teaching of its other employees at any time that such teaching interfered with the work of those employees or with other work being done." Based upon its findings the Commission concluded, with one member dissenting, that under the Workers' Compensation Act plaintiff was an employee of North State Ford Truck Sales at the time he was injured, and entered an order allowing plaintiff's claim for compensation and medical benefits.

Teague, Campbell, Dennis & Gorham, by George W. Dennis III and Linda Stephens, for plaintiff appellee.

Patterson, Dilthey, Clay, Cranfill, Sumner & Hartzog, by Robert W. Sumner, for defendant appellants.

PHILLIPS, Judge.

The only question presented by this appeal is whether within the contemplation of our Workers' Compensation Act plaintiff was an employee of defendant North State Ford Truck Sales when the accident happened. This being a jurisdictional question, G.S. 97-2, the facts found by the Industrial Commission, though supported by competent evidence, are not binding upon us. Askew v. Leonard Tire Co., 264 N.C. 168, 141 S.E. 2d 280 (1965). Nevertheless, after reviewing all the evidence recorded we adopt the findings of fact made by the Full Commission and conclude as it did that plaintiff was defendant North State Ford's employee at the time involved.

The dominant factor in determining whether a hired hand is an employee or an independent contractor is the employer's authority to control how the person hired accomplishes the task to

be done; and if that right to control exists it makes no difference that it is not exercised. *Hayes v. Board of Trustees of Elon College*, 224 N.C. 11, 29 S.E. 2d 137 (1944); *Johnson v. Asheville Hosiery Co.*, 199 N.C. 38, 153 S.E. 591 (1930); *Beal v. Champion Fiber Co.*, 154 N.C. 147, 69 S.E. 834 (1910). Here, as the evidence and findings show, supervisory authority was both retained and exercised by North State Ford. Plaintiff was told when to begin and stop work and when to break for lunch; he was told which trucks to use in instructing defendant's trainees, and to begin "hands-on" training at a certain point. That defendant's employees were not skilled Kansas Jack equipment operators and thus could not control the technical details of plaintiff's work is neither material nor unusual; as it is a rare employer today that does not employ one or more persons to operate computers, word processors and other machines that are beyond his ken. The control that is most significant is the ultimate control of hiring and firing, and under the employment agreement North State had the right to discharge plaintiff at any time, since the instruction period could be terminated any time North State thought that the trainees' progress or lack of progress justified. And plaintiff's manner of compensation was similar to that of North State's other employees as they were paid for the hours worked and plaintiff was paid for the days worked. *Durham v. McLamb*, 59 N.C. App. 165, 296 S.E. 2d 3 (1982). It is also significant, we think, that although plaintiff was engaged in several commercial activities — selling Kansas Jack equipment, selling furniture, and selling electronic equipment — he was not engaged in the independent business of instructing in the use of Kansas Jack equipment; and it was while instructing defendant's mechanics at defendant's plant, for the benefit of defendant's business, that he was injured. Defendant's several arguments are all answered by the findings of fact and answering them again would serve no purpose.

Affirmed.

Judge COZORT concurs.

Judge GREENE dissents.

Judge GREENE dissenting.

I disagree with the majority in two respects. First, I cannot adopt the findings of fact made by the Full Commission as I do not think they properly reflect the evidence. Second, I would find that the plaintiff was an independent contractor at the time of the injury and not an employee of the defendant North State Ford.

I

Since the determination of whether the plaintiff is an employee or an independent contractor is a jurisdictional question, "[t]he reviewing court has the right, and the duty, to make its own independent findings of such jurisdictional facts from its consideration of all the evidence in the record." *Lucas v. Stores*, 289 N.C. 212, 218, 221 S.E. 2d 257, 261 (1976).

In reviewing all the evidence in this case, I find the following relevant facts: 1) Plaintiff was a salesman who sold Kansas Jack truck frames and measuring equipment in the Atlanta, Georgia area. He was paid on a commission basis. 2) Plaintiff, after selling the equipment, would train the buyer's employees in the use of the equipment. He had done this on at least ten or twelve occasions. 3) On one occasion he conducted a training school in Savannah, Georgia for someone who had purchased the framing equipment from another salesman. 4) Plaintiff was one of three persons in the area capable of teaching the use of the Kansas Jack frame-straightening equipment. 5) Defendant contacted plaintiff and requested plaintiff to travel to Raleigh and train defendant's employees in the use of the Kansas Jack frame equipment. Defendant had purchased the equipment from someone else. 6) Plaintiff offered to conduct the training for a price of $250 a day plus expenses and gave defendant several dates when he could do the training. The parties agreed to begin the training on 23 July 1984 at the rate of $250 per day plus expenses. 7) Plaintiff told defendant that it usually took four to five days to complete the training but that this time could vary. The parties had no agreement as to who would determine when the training was completed. 8) Defendant informed plaintiff of the shop employees' hours and told him that it expected him to do the training during those hours. 9) Defendant requested plaintiff to use a "hands on" approach to teaching by straightening some frames of trucks defendant made available. Plaintiff used his theory and methods of

teaching and conducted the training for defendant in his usual manner. 10) Occasionally, one of defendant's supervisors would come into the teaching area to see how things were going. 11) Plaintiff determined the materials, equipment and assistants needed for the teaching of the course and defendant provided these components at the plaintiff's request. 12) Plaintiff did not use the time cards used by the employees of defendant and no income taxes or social security were withheld from plaintiff's earnings.

## II

In determining whether plaintiff is an independent contractor or an employee, it is necessary to determine if the worker has "that degree of independence necessary to require his classification as independent contractor rather than employee." *Hayes v. Elon College*, 224 N.C. 11, 16, 29 S.E. 2d 137, 140 (1944). The *Hayes* Court enumerated several factors that should be used in making this determination:

> The person employed (a) is engaged in an independent business, calling, or occupation; (b) is to have the independent use of his special skill, knowledge, or training in the execution of the work; (c) is doing a specified piece of work at a fixed price or for a lump sum or upon a quantitative basis; (d) is not subject to discharge because he adopts one method of doing the work rather than another; (e) is not in the regular employ of the other contracting party; (f) is free to use such assistants as he may think proper; (g) has full control over such assistants; and (h) selects his own time.

*Id.* at 16, 29 S.E. 2d at 140. There is no formula for weighing the relative factors but it is clear that the presence or absence of any one factor is not controlling in the determination. The factors are to be "considered along with all other circumstances." *Id.*

My review of the facts in this case convince me that plaintiff had the degree of independence necessary to require his classification as an independent contractor rather than employee. I find the following facts cumulatively decisive: 1) Plaintiff had a special knowledge of Kansas Jack motor vehicle frame-straightening equipment. 2) Plaintiff was engaged in a separate and distinct occupation from that of defendant and furnished this service to

others. 3) The teaching of the use of the Kansas Jack equipment was not a regular part of defendant's business. 4) Plaintiff's work at defendant's business was for a limited period of time. 5) Plaintiff taught the course consistent with his usual method of teaching. 6) Defendant was totally unfamiliar with how to use the equipment. 7) Plaintiff determined the price he was paid for his services. 8) Plaintiff determined the materials, equipment, and assistants needed for the teaching of the course and defendant provided these components at plaintiff's request. 9) Defendant selected the dates of the training from a limited schedule plaintiff provided.

The majority finds the defendant's supervisory authority over the plaintiff, its alleged right to fire the plaintiff, and method of payment determinative of the issue. I find none of these facts inconsistent with my conclusion that plaintiff was an independent contractor. I find the general supervision defendant provided plaintiff to be within reasonable limitations. *See Mc-Craw v. Mills, Inc.*, 233 N.C. 524, 64 S.E. 2d 658 (1951) and *Pumps, Inc. v. Woolworth Co.*, 220 N.C. 499, 17 S.E. 2d 639 (1941). As to the right to fire, I find the evidence unclear and only find there was no agreement on the issue. In any event, the right to fire is not conclusive on the issue of whether the plaintiff is an employee or an independent contractor and is only one of the several elements to be considered. The payment of the plaintiff on a daily basis, although again some evidence of "employee" status, is not conclusive. Furthermore, in this case in addition to a daily rate of payment plaintiff was to also receive his expenses.

III

Therefore, I conclude the Industrial Commission was without jurisdiction over plaintiff's claim and would reverse and remand to the Industrial Commission with the direction that the action be dismissed.