*********** EVIDENTIARY MATTERS
At the hearing before the Deputy Commissioner, plaintiff submitted a Davidson County Order Authorizing Issuance of Letters, Oath and Application for Letters Of Administration, which was admitted into the record and marked as Plaintiff's Exhibit (1). Plaintiff also submitted Defendants' Responses to Interrogatories, which were admitted into the record and marked as Plaintiffs Exhibit (2)(a), and Plaintiffs Second Set of Interrogatories and Requests for Production of Documents, which was admitted into the record and marked as Plaintiff's Exhibit (2)(b).
Additionally, at the hearing before the Deputy Commissioner, defendants submitted Dasco Transport, Inc.'s check No. 12940, dated 21 June 1999, made payable to James Boyd in the amount of $50.00, which was admitted into the record and marked as Defendants' Exhibit (1), and Dasco Transport, Inc.'s check No. 12998, dated 29 June 1999, made payable to Ms. Mona Boyd in the amount of $650.00, which was admitted into the record and marked as Defendants' Exhibit (2).
After oral argument before the Full Commission, defendants were ordered to furnish to the Industrial Commission a true and correct executed copy of any and all agreements or documents governing the relationship between defendants during the time period at issue in this matter, including therewith all additions, amendments and modifications, if any, however expressed. This shall include but not be limited to, all operating arrangements between the defendants setting forth how they shall conduct their business with respect to each other and with respect to third parties. The papers furnished to the Industrial Commission as a result of this Order were received into evidence over objection of the defendants.
 ***********
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Houser and the briefs and oral arguments before the Full Commission. The appealing party has not shown good ground to reconsider the evidence; rehear the parties or their representatives; or amend the Opinion and Award except for minor modifications. Accordingly, the Full Commission affirms the Opinion and Award of Deputy Commissioner Houser, with modifications.
The Full Commission finds as facts and concludes as matters of law the following, which were entered into by the parties in a Pre-Trial Agreement, which was admitted into the record and marked as Stipulated Exhibit (1), and at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. James D. Boyd died in a traffic accident in York County, South Carolina on June 25, 1999 while operating a truck registered to Dasco Transportation, Inc.
2 At the time of the incident giving rise to this claim, Continental Casualty Company and RSK Company were the administrators for defendant-employer Strategic Outsourcing Inc., which is self insured.
3. At the hearing before the Deputy Commissioner, the parties agreed to submit a Collision Report from South Carolina and the York County Coroner's Office Reports, which were admitted into the record and marked collectively as Stipulated Exhibit (2).
4. The issues to the determined are the following:
 a. Whether on June 25, 1999, defendant Dasco Transport Inc., employed three or more employees and was thereby subject to and bound by the North Carolina Workers' Compensation Act;
 b. Whether on June 25, 1999, an employer-employee relationship existed between James D. Boyd and Dasco Transport, Inc.;
 c. Whether on June 25, 1999, an employer-employee relationship existed between James D. Boyd and Strategic Outsourcing, Inc.;
 d. Whether Dasco Transportation, Inc. served as an agent in hiring employees for Strategic Outsourcing, Inc.;
 e. Whether James D. Boyd sustained a compensable injury by accident that resulted in his death on June 25, 1999;
 f. Whether Dasco Transportation, Inc., or Strategic Outsourcing, Inc. owes the dependents of James D. Boyd benefits and, if so, what benefits are owed and to whom;
 g. Whether the minor children of James D. Boyd are his sole dependents, and;
 h. Whether Strategic Outsourcing, Inc. should be dismissed as a party defendant to this action.
 ***********
Based upon the evidence of record and reasonable inferences therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. Decedent's mother, as guardian ad litem for decedent's two minor children, brought this action for workers' compensation benefits against Dasco Transportation and/or Strategic Outsourcing Inc. (SOT). The two minor children reside in Ohio with their mother, decedent's former wife. Both Dasco and SOT denied the claim based upon jurisdictional grounds. Namely, Dasco contended that it is not subject to the Act given that it did not have the requisite number of employees on June 25, 1999 and that decedent was not an employee of Dasco, but was an independent contractor. SOT denied the claim on the grounds that no employment relationship existed between SOI and decedent and that in fact SOT had no knowledge of decedent's existence prior to the filing of this claim by his mother. SOT also asked to be dismissed from the case, but such request was not specifically ruled upon by the Deputy Commissioner. The Full Commission hereby denies that motion.
2. Dasco is a small High Point company that consolidates home furniture shipments and makes deliveries throughout the Southeast. In the operation of its business, Dasco is involved in the transport of goods in interstate commerce. Dasco's president, Scott Shipley, and David Hamilton are its only shareholders. Shipley testified that he and Hamilton were also Dasco's only employees but his other testimony belied this and showed that it had at least 15 employees.
3. When asked how he and Hamilton could possibly run a business with a warehouse and fleet of trucks making furniture deliveries throughout the Southeastern United States, Shipley identified three other sources of help: (1) leased employees from Strategic Outsourcing, Inc., (2) loaned employees from a similar trucking company, and (3) independent contractors. The Full Commission finds that the leased employees (15 in number in June of 1999) were co-employees of Dasco and SOT and that Dasco therefore had more than 3 employees within North Carolina in June of 1999 and thus was subject to the Workers' Compensation Act. The test of employment was met, in part, when Shipley testified:
 Well, we lease a certain amount of drivers and other people, such as warehouse helping, clerical help from SOT — or we did at that time from SOT, and we basically managed them.
And
 Well, like I said, technically they were employed by SOI, but we had to direct and manage what happened in and around the warehouse and things like that, so we had to kind of — you know, orchestrate the comings and goings of the employees that we had there on the site.
Q. Or supervise the employees?
A. Basically, yes, sir.
And
 Q. Now, to your knowledge, where there employees from SOT that were on your premises supervised ultimately by anybody else other than yourself?
 A. Well, myself or my partner, (and) our operations manager.
4. The fact that both SOI and Dasco were co-employers of the leased employees (called Assigned Employees in the agreement between them) is bolstered by the language contained in paragraph 4.2 of the agreement between SOT and Dasco, as follows:
 SOI retains authority to hire, terminate, discipline, and re-assign all Assigned Employees. All Assigned Employees shall be subject to the supervision of an on-site supervisor(s)/SOT and Client as specified in Paragraph 8.2 — Supervision of Assigned Employees. Client may request that SOT hire a specific individual as an Assigned Employee, or terminate or discipline, or re-assign a specific Assigned Employee; provided such final action shall be in the sole discretion of SOT. However, the Client may have the right to accept or cancel the assignment of any Assigned Employee.
5. Dasco uses a fleet of trucks to make its deliveries and its staff is composed of lead drivers and helpers, who assist the lead drivers on trips. Dasco uses leased drivers and helpers to make the majority of its deliveries and uses independent contractors on an as-needed basis to make deliveries when its regular leased staff cannot do so.
6. Defendant Strategic Outsourcing, Inc., hereinafter "SOT" is a professional employment services company headquartered in Charlotte, North Carolina. SOI's business involves providing employee administration services for businesses, such as managing the administration of payroll and benefits. SOT is also equipped to provide workers' compensation insurance and related services to its clients. SOT also leases employees to its client businesses. SOT has three or more employees and is subject to the North Carolina Workers' Compensation Act. SOI retains and shares such control over its leased employees sufficient for the leased employees to be jointly employed by SOI and its clients.
7. Dasco and SOT have an established business relationship in which Dasco uses SOT for its regular leased drivers and helpers. Each company accepts the benefits of this arrangement. SOT provides Dasco with employment administration services, including payroll and employee benefits administration and leases employees to Dasco. Dasco retains control of the transport and delivery aspects of its furniture delivery business. Dasco holds its Interstate Commerce Commission (ICC) permit exclusively and owns its trucks independently of SOT.
8. The operational specifics of the staffing relationship between SOT and Dasco involve SOT providing packages of applications to Dasco. Shipley, owner and on-site manager for Dasco, reviews the applications and forwards the ones he selects for hire back to SOT. In conducting job interviews and reviewing applications, Shipley was the sole on-site agent for SOT. As its on-site agent, Shipley had the apparent authority to employ persons on behalf of 501, and thereby bind SOT.
9. At the hearing before the Deputy Commissioner, Shipley testified that he and his partner, Dave Hamilton, were Dasco's only employees. However, an implied contract for hire existed between the leased workers and Dasco, due to the fact that Dasco accepted the benefits of the work performed by the leased staff and the duties performed by these workers were essentially that of Dasco. Additionally, Dasco told the leased employees what to do and otherwise managed their work. Accordingly, the workers leased through SOT were joint employees of Dasco and SQL
10. SOI withheld state and federal taxes and administered and provided all employment benefits to the joint employees of SOI and Dasco. The regularly employed joint employees received hourly and overtime wages, were reimbursed for food and lodging expenses, and were subject to direct supervision and control.
11. Consistent with the agreement between Dasco and SOT, Dasco enjoyed the right to hire independent contractors without the knowledge or approval of SOT. Such independent contractors remained, at all times, separate and distinct from the leased workers who were joint employees of Dasco and SOT. Shipley acted solely as an agent of Dasco, and independently of SOT, when he retained the services of independent contractors.
12. As of June 25, 1999, Dasco had a staff of approximately 15 who were leased, joint employees of Dasco and SOI. All of the joint employees who were on staff on June 25, 1999 had applied for their jobs at Dasco's office, and had been hired pursuant to the arrangement between Dasco and SOT.
13. Prior to his association with Dasco, James D. Boyd (hereinafter "the decedent") held a variety of jobs, including working at McDonald's and Wood-Armfield Furniture Company in High Point. In 1998, the decedent worked as a trucker's helper with his step-father, Mark Hughart, who was a driver for AM Transport. Subsequently, both the decedent and Hughart ended their employment with AM Transport when it went out of business. Thereafter, the decedent began working for Shelby D. Johnson Trucking Company loading and unloading furniture and Hughart began driving for Dasco.
14. On or about June 14, 1999, Dasco needed to fill a helper position to accompany one of their lead drivers, Adam Epperson, who was a leased worker and joint employee of Dasco and SOT. This position was open due to the fact that Epperson's normal helper (also a leased worker and joint employee) was going to be unavailable for at least the next two scheduled delivery trips. The decedent's step-father, Hughart, had been informed of the opening by Shipley, and brought the decedent to Dasco's office to apply for this job. "Mr. Shipley had asked me if I knew anybody that could go out on a truck as a helper, and I recommended James to him. He asked me to bring James up there to fill out an application. * * * Then he had told me when I seen him the next time that Scott (Shipley) had let Adam Epperson look over his application, Adam said it was fine, that he would take him."
15. Shipley's testimony that he did not have the decedent fill out an application nor did he forward decedent's application to SOI is found not to be credible. Also found not to be credible is SOI's evidence that it did not receive decedent's application. Shipley could not recall any applicant he had selected for hire ever being rejected by SOI. The contract between SOT and Dasco contemplates that occasionally Dasco will hire a joint employee without informing SOT and provides conditions that apply in such situations.
16. The Full Commission also finds Shipley's testimony that decedent was to receive only $350.00 per trip without withholding or other incidents of employment not to be credible. The only evidence other than Shipley's testimony that decedent's wages were to be $350.00 per trip is the $50.00 check Dasco gave decedent "for expenses" prior to his first trip and the $650.00 check delivered to decedent's survivors after decedent's death. Decedent's work-related accidental death TI days after his hire did not give sufficient time for him to receive a regular payroll check from SOT. Nor does the Full Commission find credible Shipley's testimony that decedent was hired for only two trips. The Full Commission finds that since decedent was hired to replace a leased helper who was a co-employee of Dasco and SOI, decedent was also a leased helper who was a co-employee of Dasco and SOT.
17. The Full Commission finds other evidence of decedent's status as an employee in the fact that he was hired as a helper. Webster defines helper as "a relatively unskilled worker who assists a skilled worker usually by manual labor." Relatively unskilled workers require direction and control and such direction and control equate to employment rather than the status of an independent contractor. Helpers were supervised by Dasco's leased lead drivers and decedent was supervised by Adam Epperson who accompanied him on both delivery trips and told him what to do and when to do it. By definition, a lead person is a person who gives direction and control.
18. At the hearing before the Deputy Commissioner, Mark Hicks, SOI's workers' compensation claims manager, testified that his company had no involvement with the decedent's employment, and that neither SOT, nor any agent of SOT, controlled in any manner the performance of the decedent's work. The fact that SOI did not own delivery trucks or provide equipment to the decedent is not probative of its status as a potential joint employer of the decedent as these facts exactly correspond with the amount of control SOT exercised with other joint employees of SOT and Dasco. SOT retained the right to fire its leased employees and other incidents of employment. SOI's agents (Shipley, Dave Hamilton, and Dasco's operation manager) managed its leased joint employees when they were working for Dasco.
19. For the two delivery trips made by the decedent, the trucks were owned and provided by Dasco, which carried insurance, ICC permits and DOT permits for these trucks. Dasco through its leased joint employee Adam Epperson controlled the minute details of how the decedent carried out his duties.
20. On June 25, 1999, while returning from his second delivery trip, the decedent was driving a Dasco truck in the northbound direction on Interstate Highway 77 in York County, South Carolina near Rock Hill, SC. At the time in question, Epperson was asleep in the sleeping berth in the rear of the truck cab. The truck, with the decedent at the wheel, veered off the road onto the left shoulder and collided with a construction truck that was parked in the left side shoulder of the northbound lane. Passing motorists were able to rescue Epperson, but the decedent died at the scene.
21. Despite the lack of production of records reflecting SOI's involvement with the decedent's employment, the reasonable inference from the credible evidence of record supports a finding that the decedent was hired by Shipley in a manner such that the decedent was a leased, joint employee of Dasco and SOT. Alternatively, given that SOT clothed Scott Shipley with apparent authority to hire joint employees, SOT is estopped from denying that the decedent was a joint employee of SOI and Dasco.
22. Even though the credible evidence of record supports a finding that the decedent was a joint employee, the evidence also supports a finding that the decedent was an employee of Dasco on June 25, 1999, independent of his employment relationship with SOI. An implied contract for hire existed between the decedent and Dasco due to the fact that Dasco accepted the benefit of his work and the duties he performed were essentially those of Dasco. Additionally, Dasco controlled the day to day details of decedent's work through lead driver Adam Epperson and provided the valuable instrument through which its business could be conducted, the delivery truck along with its ICC license and DOT permit.
23. At the time of the decedent's death, he was married to, but separated from Ms. Mona Boyd. Ms. Mona Boyd had abandoned the decedent the previous Christmas in order to reestablish a relationship with her former husband. Ms. Mona Boyd has not filed a claim for benefits, and the period of limitation for filing such a claim has expired.
24. The Clerk of Superior Court of Davidson County issued Letters of Administration to Ms. Rita Hughart, mother of the decedent, after the Clerk found that Ms. Mona Boyd was ineligible to serve as Administratrix.
25. On June 25, 1999, the decedent's sole dependents were his minor children, James Dakota Levi Boyd and Kristen Nicole Boyd. Ms. Rita Hughart has been duly appointed as Guardian Ad Litem for these minor children.
26. The circumstances of the incident resulting in the decedent's death constituted an interruption of his regular work routine, and the introduction thereby of unusual conditions likely to result in unexpected consequences.
27. On June 25, 1999, the decedent sustained an injury by accident arising out of and in the course of his employment with defendant-employer Dasco and defendant-employer SOI which resulted in his death.
28. Because the decedent was a joint employee of Dasco and SOI at the time of the injury by accident that resulted in his death on June 25,
1999, each employer is equally liable for the consequences thereof
29. On June 25, 1999, the decedent's average weekly wage was $350.00, yielding a compensation rate of $233.10 per week.
 ***********
Based upon the foregoing findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. On June 25, 1999, the decedent's average weekly wage was $350.00, yielding a compensation rate of $233.10 per week. N.C. Gen. Stat. §97-2(5).
2. On June 25, 1999, Dasco and SOI employed three or more persons within North Carolina and were therefore subject to and bound by the provisions of the North Carolina Workers' Compensation Act. N.C. Gen. Stat. § 97-2(2).
3. All parties are properly before the Industrial Commission which has jurisdiction over the parties and the subject matter of this claim. N.C. Gen. Stat. § 97-2(2).
4. In order to receive benefits under the North Carolina Workers' Compensation Act, an employment relationship must exist. Youngblood v.North State Ford Truck Sales, 321 N.C. 380, 364 S.E.2d 433, rehearingdenied, 322 N.C. 116, 367 S.E.2d 923 (1988). While in general, the rule of liberal construction of the Act is applied to resolve issues in favor of plaintiffs, our Supreme Court has specifically held that the rule of liberal construction does not and should not be applied to the determination of whether the employer-employee relationship exists. Hayesv. Board of Trustees of Elon College, 224 N.C. 11, 19, 29 S.E.2d 137, 142
(1944).
 5. [An employer-employee relationship exists "[where the party for whom the work is being done retains the right to control and direct the manner in which the details of the work are to be executed."
McCown v. Hines, 353 N.C. 683, 686, 549 S.E.2d 175, 177 (2001) (quotingYoungblood v. North Slate Ford Truck Sales, 321 N.C. 380, 384,364 S.E.2d 433, 437 (1988)). On June 25, 1999, the decedent was a joint employee of Dasco and SOI, and an employer-employee relationship existed between the decedent and those employers. N.C. Gen. Stat. § 97-2(2).
Plaintiff was an employee of defendant-employer Dasco given that: (a) an implied contract for hire existed between the decedent and Dasco; (b) at the time of the incident which resulted in his death, the work the decedent was performing was essentially that of Dasco, and; (c) Dasco directly controlled the most crucial aspects of decedent's work through the supervision of its lead driver and provided the valuable instrument through which its business could be conducted. Henderson v. Manpower ofGuilford County, 70 N.C. App. 408, 319 S.E.2d 690 (1984); Youngblood v.North State Ford Truck Sales, 321 N.C. 380, 364 S.E.2d 433 (1988); Barberv. Going West Transportation Inc., 134 N.C. App. 428, 517 S.E.2d 914
(1990). SOI is estopped from denying that the decedent was its employee.Purser v. Heatherlin Properties, 137 N.C. App. 332, 527 S.E.2d 689
(2000). Decedent was hired to replace a leased joint employee helper of SOT and Dasco. Helpers were supervised by leased joint employee lead drivers and thus were subject to control and direction as an employee. The case at bar is distinguishable from Williams v. ARL. Inc.,133 N.C. App. 625, 516 S.E.2d 187 (1999). Here, unlike Williams, the decedent as a helper was subject to the direction and control of the lead driver. Hence, more of the elements of the Hayes decision were present.
5. On June 25. 1999, the decedent sustained an injury by accident arising out of and in the course of his employment with defendant-employer Dasco and defendant-employer SOT which resulted in his death. N.C. Gen. Stat. §§ 97-2(6); 97-38.
6. With the absence of an agreement between defendant-employer Dasco and defendant-employer SOI regarding their liability for the injury by accident resulting in decedent's death, both are equally liable for the consequences thereof N.C. Gen. Stat. § 97-51; Henderson v. Manpowerof Guilford County, 70 N.C. App. 408, 319 S.E.2d 690 (1984).
7. As of June 25, 1999, Ms. Mona Boyd was separated from, and had abandoned the decedent, and is therefore not entitled to benefits. N.C. Gen. Stat. § 97-38.
8. As the child of the decedent, James Dakota Levi Boyd is conclusively presumed to have been wholly dependent upon the decedent for support. N.C. Gen. Stat. § 97-2(12); N.C. Gen. Stat. § 97-39. Therefore, James Dakota Levi Boyd is entitled to receive one-half (1/2) of $233.10 for a period of four-hundred (400) weeks from the date of the decedent's death, or until he reaches eighteen (18) years of age. N.C. Gen. Stat. § 97-38.
9. As the child of the decedent, Kristen Nicole Boyd is conclusively presumed to have been wholly dependent upon the decedent for support. NC. Gen. Stat. §§ 97-2(12); 97-39. Therefore, Kristen Nicole Boyd is entitled to receive one-half (1/2) of $233.10 for a period of four-hundred (400) weeks from the date of the decedent's death, or until she reaches eighteen (18) years of age. N.C. Gen. Stat. § 97-38.
10. Plaintiffs are entitled to have defendants pay burial expenses pursuant to the terms of N.C. Gen. Stat, § 97-38.
11. Decedent was not an independent contractor. The North Carolina Supreme Court has enumerated a number of factors which, if present, indicate that an individual is an independent contractor rather than an employee:
 The person employed (a) is engaged in an independent business, calling, or occupation; (b) is to have the independent use of his special skill, knowledge or training in the execution of the work; (c) is doing a specified piece of work at a fixed price or for a lump sum or upon a quantitative basis; (d) is not subject to discharge because he adopts one method of doing the work rather than another; (e) is not in the regular employ of the other contracting parties; (f) is free to use such assistants as he may think proper; (g) has full control over such assistants; and (h) selects his own time.
 The presence of no particular one of these indicia is controlling. Nor is the presence of all required.
 Hayes v. Board of Trustees of Elon College, 224 N.C. 11, 16,29 S.E.2d 137, 140 (1944). See also McCown v. Hines, 140 N.C. App. 440, 537 S.E.2d 242 (2000), affd, 353 N.C. 683, 549 S.E.2d 175 (2001); Williams v. ARL, Inc., 133 N.C. App. 625, 516 S.E.2d 187
(1999); Fulcher by Wall v. Willard's Cab Co., 132 N.C. App. 74, 511 S.E.2d 9 (1999); Youngblood v. North State Ford Truck Sales, 87 N.C. App. 35, 359 S.E.2d 256 (1987), aff'd, 321 N.C. 380, 364 S.E.2d 433, reh'g denied, 322 N.C. 116, 367 S.E.2d 923
(1988).
Here, (a) decedent was not engaged in an independent business, calling or profession; he was a helper for a lead driver, (b) he had no independent use of any special skill, knowledge or training in the execution of the work; he was subject to the control of the lead driver and was required to do his bidding, (c) he was not doing a specified piece of work at a fixed price or for a lump sum or upon a quantitative basis; the only evidence of this was the testimony of Shipley, which the Full Commission found not to be credible, (d) he was subject to discharge because he adopts one method of doing the work rather than another (e) he was in the regular employ of the contracting parties; (f) he was not free to use such assistants as he may think proper, (g)he did not have any assistants nor control over assistants; and (h) he did not select his own time but was subject to the orders of his lead driver.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. In equal portions, defendants shall pay to Ms. Rita Hughart, as his Guardian Ad Litem, for the use and benefit of the minor child James Dakota Levi Boyd, one-half of $233.10 for a period of four-hundred (400) weeks from the date of the decedent's death or until he reaches eighteen (18) years of age, whichever is later. From the amounts having accrued, this compensation shall be paid in a lump sum. This compensation is subject to the attorney's fee approved herein.
2. In equal portions, defendants shall pay to Ms. Rita Hughart as her Guardian Ad Litem, for the use and benefit of the minor child Kristen Nicole Boyd, one-half (1/2) of $233.10 for a period of four-hundred (400) weeks from the date of the decedent's death or until she reaches eighteen (18) years of age, whichever is later. From the amounts having accrued, this compensation shall be paid in a lump sum. This compensation is subject to the attorney's fee approved herein.
3. In equal portions, defendants shall pay plaintiffs burial expenses pursuant to the provisions of N.C. Gen. Stat. § 97-38.
4. A reasonable attorney's fee of twenty-five percent (25%) of the compensation awarded herein is approved for counsel for plaintiffs. From the compensation having accrued, this fee shall be deducted from the amounts due each minor, and paid directly to counsel for plaintiffs, with counsel for plaintiffs receiving every fourth check otherwise payable to each thereafter.
5. Defendants shall pay the costs.
This 6th day of September 2002.
 S/_____________ THOMAS J. BOLCH COMMISSIONER
CONCURRING:
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
 S/____________ BUCK LATTIMORE CHAIRMAN