* * * * * * * * * * *
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Houser, the briefs and oral arguments before the Full Commission, and the January 5, 2005, Opinion of the North Carolina Court of Appeals. The prior Opinion and Award has been modified in accordance with the January 5, 2005, Opinion of the North Carolina Court of Appeals.
 * * * * * * * * * * *
The Full Commission finds as facts and concludes as matters of law the following, which were entered into by the parties in a Pre-Trial Agreement, which was admitted into the record and marked as Stipulated Exhibit (1), and at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. James D. Boyd died in a traffic accident in York County, South Carolina, on June 25, 1999, while operating a truck registered to Dasco Transportation, Inc.
2 At the time of the incident giving rise to this claim, Continental Casualty Company and RSK Company were the administrators for defendant-employer Strategic Outsourcing, Inc., which is self insured.
3. At the hearing before the Deputy Commissioner, the parties agreed to submit a Collision Report from South Carolina and the York County Coroner's Office Reports, which were admitted into the record and marked collectively as Stipulated Exhibit (2). *Page 3 
4. The issues to the determined are the following:
 a. Whether on June 25, 1999, defendant Dasco Transportation, Inc., employed three or more employees and was thereby subject to and bound by the North Carolina Workers' Compensation Act;
 b. Whether on June 25, 1999, an employer-employee relationship existed between James D. Boyd and Dasco Transportation, Inc.;
 c. Whether on June 25, 1999, an employer-employee relationship existed between James D. Boyd and Strategic Outsourcing, Inc.;
 d. Whether Dasco Transportation, Inc., served as an agent in hiring employees for Strategic Outsourcing, Inc.;
 e. Whether James D. Boyd sustained a compensable injury by accident that resulted in his death on June 25, 1999;
 f. Whether Dasco Transportation, Inc., or Strategic Outsourcing, Inc., owes the dependents of James D. Boyd benefits and, if so, what benefits are owed and to whom;
 g. Whether the minor children of James D. Boyd are his sole dependents; and,
 h. Whether Strategic Outsourcing, Inc., should be dismissed as a party defendant to this action.
 * * * * * * * * * * *
Based upon the evidence of record and reasonable inferences therefrom, the Full Commission makes the following:
 FINDINGS OF FACT *Page 4 
1. The decedent's mother, as Guardian Ad Litem for the decedent's two minor children, brought this action for workers' compensation benefits against Dasco Transportation, Inc., (Dasco) and/or Strategic Outsourcing, Inc. (SOI). The two minor children reside in Ohio with their mother, the decedent's former wife. Both Dasco and SOI denied the claim based upon jurisdictional grounds. Namely, Dasco contended that it is not subject to the Act given that it did not have the requisite number of employees on June 25, 1999, and that the decedent was not an employee of Dasco, but was an independent contractor. SOI denied the claim on the grounds that no employment relationship existed between SOI and the decedent and that in fact SOI had no knowledge of the decedent's existence prior to the filing of this claim by his mother. SOI also asked to be dismissed from the case, but such request was denied by the Full Commission.
2. Dasco is a small High Point company that consolidates home furniture shipments and makes deliveries throughout the Southeast. In the operation of its business, Dasco is involved in the transport of goods in interstate commerce. Dasco's president, Scott Shipley, and David Hamilton are its only shareholders. Shipley testified that he and Hamilton were also
Dasco's only employees, but his other testimony belied this and showed that it had at least 15 employees. 3. When asked how he and Hamilton could possibly run a business with a warehouse and fleet of trucks making furniture deliveries throughout the Southeastern United States, Shipley identified three other sources of help: (1) leased employees from Strategic Outsourcing, Inc., (2) loaned employees from a similar trucking company, and (3) independent contractors. The Full Commission finds that the leased employees (15 in number in June of 1999) were co-employees of Dasco and SOI, and that Dasco therefore had more than 3 *Page 5 
employees within North Carolina in June of 1999 and thus was subject to the Workers' Compensation Act. The test of employment was met, in part, when Shipley testified:
 Well, we lease a certain amount of drivers and other people, such as warehouse helping, clerical help from SOI — or we did at that time from SOI, and we basically managed them.
And:
 Well, like I said, technically they were employed by SOI, but we had to direct and manage what happened in and around the warehouse and things like that, so we had to kind of — you know, orchestrate the comings and goings of the employees that we had there on the site.
 Q. Or supervise the employees?
 A. Basically, yes, sir.
And:
 Q. Now, to your knowledge, were the employees from SOI that were on your premises supervised ultimately by anybody else other than yourself?
 A. Well, myself or my partner, (and) our operations manager.
4. The fact that both SOI and Dasco were co-employers of the leased employees (called Assigned Employees in the agreement between them) is bolstered by the language contained in paragraph 4.2 of the agreement between SOI and Dasco, as follows:
 SOI retains authority to hire, terminate, discipline, and re-assign all Assigned Employees. All Assigned Employees shall be subject to the supervision of an on-site supervisor(s)/SOI and Client as specified in Paragraph 8.2 — Supervision of Assigned Employees. Client may request that SOI hire a specific individual as an Assigned Employee, or terminate or discipline, or re-assign a specific Assigned Employee; provided such final action shall be in the sole discretion of SOI. However, the Client may have the right to accept or cancel the assignment of any Assigned Employee. *Page 6 
5. Dasco uses a fleet of trucks to make its deliveries and its staff is composed of lead drivers and helpers who assist the lead drivers on trips. Dasco uses leased drivers and helpers to make the majority of its deliveries, and uses independent contractors on an as-needed basis to make deliveries when its regular leased staff cannot do so.
6. SOI is a professional employment services company headquartered in Charlotte, North Carolina. SOI's business involves providing employee administration services for businesses, such as managing the administration of payroll and benefits. SOI is also equipped to provide workers' compensation insurance and related services to its clients. SOI also leases employees to its client businesses. SOI has three or more employees and is subject to the North Carolina Workers' Compensation Act. SOI retains and shares such control over its leased employees sufficient for the leased employees to be jointly employed by SOI and its clients.
7. Dasco and SOI have an established business relationship in which Dasco uses SOI for its regular leased drivers and helpers. Each company accepts the benefits of this arrangement. SOI provides Dasco with employment administration services, including payroll and employee benefits administration and leases employees to Dasco. Dasco retains control of the transport and delivery aspects of its furniture delivery business. Dasco holds its Interstate Commerce Commission (ICC) permit exclusively and owns its trucks independently of SOI.
8. The operational specifics of the staffing relationship between SOI and Dasco involve SOI providing packages of applications to Dasco. Shipley, owner and on-site manager for Dasco, reviews the applications and forwards the ones he selects for hire back to SOI. In conducting job interviews and reviewing applications, Shipley was the sole on-site agent for SOI. *Page 7 
9. At the hearing before the Deputy Commissioner, Shipley testified that he and his partner, Dave Hamilton, were Dasco's only employees. However, an implied contract for hire existed between the leased workers and Dasco, due to the fact that Dasco accepted the benefits of the work performed by the leased staff and the duties performed by these workers were essentially that of Dasco. Additionally, Dasco told the leased employees what to do and otherwise managed their work. Accordingly, the workers leased through SOI were joint employees of Dasco and SOI
10. SOI withheld state and federal taxes and administered and provided all employment benefits to the joint employees of SOI and Dasco. The regularly employed joint employees received hourly and overtime wages, were reimbursed for food and lodging expenses, and were subject to direct supervision and control.
11. Consistent with the agreement between Dasco and SOI, Dasco enjoyed the right to hire independent contractors without the knowledge or approval of SOI. Such independent contractors remained, at all times, separate and distinct from the leased workers who were joint employees of Dasco and SOI. Shipley acted solely as an agent of Dasco, and independently of SOI, when he retained the services of independent contractors.
12. As of June 25, 1999, Dasco had a staff of approximately 15 who were leased, joint employees of Dasco and SOI. All of the joint employees who were on staff on June 25, 1999, had applied for their jobs at Dasco's office, and had been hired pursuant to the arrangement between Dasco and SOI.
13. Prior to his association with Dasco, the decedent, James D. Boyd, held a variety of jobs, including working at McDonald's and Wood-Armfield Furniture Company in High Point. In 1998, the decedent worked as a trucker's helper with his step-father, Mark Hughart, *Page 8 
who was a driver for AM Transport. Subsequently, both the decedent and Hughart ended their employment with AM Transport when it went out of business. Thereafter, the decedent began working for Shelby D. Johnson Trucking Company loading and unloading furniture, and Hughart began driving for Dasco.
14. On or about June 14, 1999, Dasco needed to fill a helper position to accompany one of their lead drivers, Adam Epperson, who was a leased worker and joint employee of Dasco and SOI. This position was open due to the fact that Epperson's normal helper (also a leased worker and joint employee) was going to be unavailable for at least the next two scheduled delivery trips. The decedent's step-father, Hughart, had been informed of the opening by Shipley, and brought the decedent to Dasco's office to apply for this job. As Hughart testified, without objection:
 Mr. Shipley had asked me if I knew anybody that could go out on a truck as a helper, and I recommended [the decedent] to him. He asked me to bring [the decedent] up there to fill out an application. . . . [The decedent] had told me when I seen him the next time that [Shipley] had let Adam Epperson look over his application, Adam said it was fine, that he would take him.
15. Shipley's testimony that he did not have the decedent fill out an application is found not to be credible in light of the decedent's statements regarding the filling out of an application, as related in Hughart's hearsay testimony.
16. The Full Commission also finds Shipley's testimony that the decedent was to receive only $350.00 per trip without withholding or other incidents of employment not to be credible. The only evidence other than Shipley's testimony that the decedent's wages were to be $350.00 per trip is the $50.00 check Dasco gave the decedent "for expenses" prior to his first trip and the $650.00 check delivered to the decedent's survivors after the decedent's death. The decedent's work-related accidental death 11 days after his hire did not give sufficient time for *Page 9 
him to receive a regular payroll check from Dasco. Nor does the Full Commission find credible Shipley's testimony that the decedent was hired for only two trips. The Full Commission finds that since the decedent was hired by Dasco for an indefinite duration to replace a leased helper who was a co-employee of Dasco and SOI.
17. The Full Commission finds other evidence of the decedent's status as an employee in the fact that he was hired as a helper. Webster's Dictionary defines helper as "a relatively unskilled worker who assists a skilled worker usually by manual labor." Relatively unskilled workers require direction and control, and such direction and control equate to employment rather than the status of an independent contractor. Helpers were supervised by Dasco's leased lead drivers, and the decedent was supervised by Adam Epperson who accompanied him on both delivery trips and told him what to do and when to do it. By definition, a lead person is a person who gives direction and control.
18. At the hearing before the Deputy Commissioner, Mark Hicks, SOI's workers' compensation claims manager, testified that his company had no involvement with the decedent's employment, and that neither SOI, nor any agent of SOI, controlled in any manner the performance of the decedent's work. Plaintiff presented no evidence that the decedent was ever aware of the existence of SOI, or that he had been hired to replace a leased helper who was a co-employee of Dasco and SOI.
19. For the two delivery trips made by the decedent, the trucks were owned and provided by Dasco, which carried insurance, ICC permits, and DOT permits for these trucks. Dasco, through its leased joint employee Adam Epperson, controlled the minute details of how the decedent carried out his duties. *Page 10 
20. On June 25, 1999, while returning from his second delivery trip, the decedent was driving a Dasco truck in the northbound direction on Interstate Highway 77 in York County, South Carolina, near Rock Hill, SC. At the time in question, Epperson was asleep in the sleeping berth in the rear of the truck cab. The truck, with the decedent at the wheel, veered off the road onto the left shoulder and collided with a construction truck that was parked in the left side shoulder of the northbound lane. Passing motorists were able to rescue Epperson, but the decedent died at the scene.
21. Despite the lack of production of records reflecting the decedent's employment, the reasonable inference from the credible evidence of record supports a finding that the decedent was hired by Shipley in a manner such that the decedent was an employee of Dasco alone. Because Plaintiff has failed to show that the decedent was ever aware of the existence of SOI, the Full Commission finds that the decedent could not have relied upon the purported apparent authority of Scott Shipley to hire joint employees of Dasco and SOI. It follows that SOI is not estopped from denying that the decedent was a joint employee of SOI and Dasco.
22. The evidence supports a finding that the decedent was an employee of Dasco on June 25, 1999, independent of any employment relationship with SOI. An implied contract for hire existed between the decedent and Dasco due to the fact that Dasco accepted the benefit of his work and the duties he performed were essentially those of Dasco. Additionally, Dasco controlled the day to day details of the decedent's work through lead driver Adam Epperson and provided the valuable instrument through which its business could be conducted, the delivery truck along with its ICC license and DOT permit.
23. At the time of the decedent's death, he was married to, but separated from, Ms. Mona Boyd. Boyd had abandoned the decedent the previous Christmas in order to reestablish a *Page 11 
relationship with her former husband. Boyd has not filed a claim for benefits, and the period of limitation for filing such a claim has expired.
24. The Clerk of Superior Court of Davidson County issued Letters of Administration to Ms. Rita Hughart, mother of the decedent, after the Clerk found that Boyd was ineligible to serve as Administratrix.
25. On June 25, 1999, the decedent's sole dependents were his minor children, James Dakota Levi Boyd and Kristen Nicole Boyd. Ms. Hughart has been duly appointed as Guardian Ad L item for these minor children.
26. The circumstances of the incident resulting in the decedent's death constituted an interruption of his regular work routine, and the introduction thereby of unusual conditions likely to result in unexpected consequences.
27. On June 25, 1999, the decedent sustained an injury by accident arising out of and in the course of his employment with defendant-employer Dasco which resulted in his death.
28. Because the decedent was an employee only of Dasco at the time of the injury by accident that resulted in his death on June 25, 1999, Dasco is solely liable for the consequences thereof.
29. On June 25, 1999, the decedent's average weekly wage was $350.00, yielding a compensation rate of $233.10 per week.
 * * * * * * * * * * *
Based upon the foregoing findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. On June 25, 1999, the decedent's average weekly wage was $350.00, yielding a compensation rate of $233.10 per week. N.C. Gen. Stat. § 97-2(5). *Page 12 
2. On June 25, 1999, Dasco and SOI employed three or more persons within North Carolina and were therefore subject to and bound by the provisions of the North Carolina Workers' Compensation Act. N.C. Gen. Stat. § 97-2(2).
3. All parties are properly before the Industrial Commission which has jurisdiction over the parties and the subject matter of this claim. N.C. Gen. Stat. § 97-2(2).
4. In order to receive benefits under the North Carolina Workers' Compensation Act, an employment relationship must exist. Youngblood v.North State Ford Truck Sales, 321 N.C. 380, 364 S.E.2d 433,rehearing denied, 322 N.C. 116, 367 S.E.2d 923 (1988). While in general, the rule of liberal construction of the Act is applied to resolve issues in favor of plaintiffs, our Supreme Court has specifically held that the rule of liberal construction does not and should not be applied to the determination of whether the employer-employee relationship exists.Hayes v. Board of Trustees of Elon College, 224 N.C. 11, 19,29 S.E.2d 137, 142 (1944).
5. The decedent was not an independent contractor. The North Carolina Supreme Court has enumerated a number of factors which, if present, indicate that an individual is an independent contractor rather than an employee:
 The person employed (a) is engaged in an independent business, calling, or occupation; (b) is to have the independent use of his special skill, knowledge or training in the execution of the work; (c) is doing a specified piece of work at a fixed price or for a lump sum or upon a quantitative basis; (d) is not subject to discharge because he adopts one method of doing the work rather than another; (e) is not in the regular employ of the other contracting parties; (f) is free to use such assistants as he may think proper; (g) has full control over such assistants; and (h) selects his own time.
 The presence of no particular one of these indicia is controlling. Nor is the presence of all required.
Hayes v. Board of Trustees of Elon College, 224 N.C. 11, 16,29 S.E.2d 137, 140 (1944). See also McCown v. Hines, 140 N.C. App. 440,537 S.E.2d 242 (2000), affd, 353 N.C. 683, *Page 13 
549 S.E.2d J75 (2001); Williams v. ARL, Inc., 133 N.C.App. 625,516 S.E.2d 187 (1999);Fulcher by Wall v. Willard's Cab Co., 132 N.C. App. 74,511 S.E.2d 9 (1999); Youngblood v. North State Ford Truck Sales,87 N.C. App. 35, 359 S.E.2d 256 (1987), aff'd, 321 N.C. 380, 364 S.E.2d 433,reh'g denied, 322 N.C. 116, 367 S.E.2d 923 (1988). Here, (a) the decedent was not engaged in an independent business, calling or profession, but was instead a helper for a lead driver; (b) he had no independent use of any special skill, knowledge or training in the execution of the work, and was instead subject to the control of the lead driver and was required to do his bidding; (c) he was not doing a specified piece of work at a fixed price or for a lump sum or upon a quantitative basis, since the only evidence of this was the testimony of Shipley, which the Full Commission found not to be credible; (d) he was subject to discharge because he adopts one method of doing the work rather than another; (e) he was in the regular employ of the contracting parties; (f) he was not free to use such assistants as he may think proper; (g) he did not have any assistants nor control over assistants; and (h) he did not select his own time but was subject to the orders of his lead driver.
6. An employer-employee relationship exists "where the party for whom the work is being done retains the right to control and direct the manner in which the details of the work are to be executed." McCown v.Hines, 353 N.C. 683, 686, 549 S.E.2d 175, 177 (2001) (quotingYoungblood at 384, 364 S.E.2d at 437). Plaintiff was an employee of defendant-employer Dasco given that: (a) an implied contract for hire existed between the decedent and Dasco; (b) at the time of the incident which resulted in his death, the work the decedent was performing was essentially that of Dasco; and (c) Dasco directly controlled the most crucial aspects of the decedent's work through the supervision of its lead driver and provided the valuable instrument through which its business could be conducted. Henderson v. Manpower of GuilfordCounty, *Page 14 70 N.C. App. 408, 319 S.E.2d 690 (1984); Youngblood, supra; Barber v.Going West Transportation Inc., 134 N.C. App. 428, 517 S.E.2d 914
(1990). It follows that, on June 25, 1999, the decedent was an employee Dasco, and an employer-employee relationship existed between the decedent and Dasco. N.C. Gen. Stat. § 97-2(2).
7. Although the decedent was hired to replace a leased joint employee helper of SOI and Dasco, there is no evidence that SOI was ever aware of the decedent's employment by Dasco, or that the decedent was ever aware of SOI's role as a professional employment services company engaged by Dasco. Because, in the absence of awareness of the existence of SOI, the decedent could not have relied upon the purported apparent authority of Scott Shipley to bind SOI in an employment relationship, it follows that SOI is not estopped from denying that the decedent was its employee. It follows that, on June 25, 1999, the decedent was not an employee of SOI. N.C. Gen. Stat. § 97-2(2).
8. On June 25, 1999, the decedent sustained an injury by accident arising out of and in the course of his employment with defendant-employer Dasco which resulted in his death. N.C. Gen. Stat. §§ 97-2(6); 97-38.
9. As of June 25, 1999, Ms. Mona Boyd was separated from, and had abandoned, the decedent, and is therefore not entitled to benefits. N.C. Gen. Stat. § 97-38.
10. As the child of the decedent, James Dakota Levi Boyd is conclusively presumed to have been wholly dependent upon the decedent for support. N.C. Gen. Stat. §§ 97-2(12); 97-39. Therefore, James Dakota Levi Boyd is entitled to receive one-half (1/2) of $233.10 for a period of four-hundred (400) weeks from the date of the decedent's death, or until he reaches eighteen (18) years of age. N.C. Gen. Stat. § 97-38. *Page 15 
11. As the child of the decedent, Kristen Nicole Boyd is conclusively presumed to have been wholly dependent upon the decedent for support. NC. Gen. Stat. §§ 97-2(12); 97-39. Therefore, Kristen Nicole Boyd is entitled to receive one-half (1/2) of $233.10 for a period of four-hundred (400) weeks from the date of the decedent's death, or until she reaches eighteen (18) years of age. N.C. Gen. Stat. § 97-38.
12. Plaintiff is entitled to have defendant Dasco pay burial expenses pursuant to the terms of N.C. Gen. Stat. § 97-38.
 * * * * * * * * * * *
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. In equal portions, defendant Dasco shall pay to Ms. Rita Hughart, as his Guardian Ad Litem, for the use and benefit of the minor child James Dakota Levi Boyd, one-half of $233.10 for a period of four-hundred (400) weeks from the date of the decedent's death or until he reaches eighteen (18) years of age, whichever is later. From the amounts having accrued, this compensation shall be paid in a lump sum. This compensation is subject to the attorney's fee approved herein.
2. In equal portions, defendant Dasco shall pay to Ms. Rita Hughart as her Guardian Ad Litem, for the use and benefit of the minor child Kristen Nicole Boyd, one-half (1/2) of $233.10 for a period of four-hundred (400) weeks from the date of the decedent's death or until she reaches eighteen (18) years of age, whichever is later. From the amounts having accrued, this compensation shall be paid in a lump sum. This compensation is subject to the attorney's fee approved herein. *Page 16 
3. In equal portions, defendant Dasco shall pay plaintiff's burial expenses pursuant to the provisions of N.C. Gen. Stat. § 97-38.
4. A reasonable attorney's fee of twenty-five percent (25%) of the compensation awarded herein is approved for counsel for plaintiff. From the compensation having accrued, this fee shall be deducted from the amounts due each minor, and paid directly to counsel for plaintiff, with counsel for plaintiff receiving every fourth check otherwise payable to each thereafter.
5. Defendants shall pay the costs.
This the __ day of August, 2008.
S/___________________ DANNY L. McDONALD COMMISSIONER
CONCURRING:
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
 S/___________________ BUCK LATTIMORE COMMISSIONER