TAMMY LYNN McCOWN, ADMINISTRATRIX OF THE ESTATE OF JAMES ROBERT McCOWN, DECEASED EMPLOYEE v. CURTIS HINES, EMPLOYER, AND MIKE HINES D/B/A MIKE HINES HEATING AND AIR CONDITIONING, EMPLOYER, AND N.C. HOME BUILDERS SELF-INSURED FUND, INC.

No. 554A00

(Filed 20 July 2001)

### Workers' Compensation— independent contractor—roofer—factors

The Court of Appeals properly reversed the Industrial Commission's opinion and award concluding that an employer-employee relationship existed at the time of the injury where plaintiff possessed the independence necessary for classification as an independent contractor. Applying the factors in *Hayes v. Board of Trustees of Elon College*, 224 N.C. 11, the evidence was uncontradicted that plaintiff was engaged in the independent calling of roofing, that plaintiff had independent use of his specialized skills and knowledge without any requirements that he adopt one particular roofing method, that plaintiff was hired only for a short-term roofing job, and that plaintiff was free to set his own hours.

Appeal pursuant to N.C.G.S. § 7A-30(2) from the decision of a divided panel of the Court of Appeals, 140 N.C. App. 440, 537 S.E.2d 242 (2000), reversing the opinion and award entered by the North Carolina Industrial Commission on 3 June 1999. Heard in the Supreme Court 19 April 2001.

McCOWN v. HINES

[353 N.C. 683 (2001)]

*The Jernigan Law Firm, by Leonard T. Jernigan, Jr., and N. Victor Farah; and Wilkins and Wellons, by Allen Wellons, for plaintiff-appellant.*

*Cranfill, Sumner & Hartzog, L.L.P., by Susan K. Burkhart, for defendant-appellees.*

PARKER, Justice.

The issue before this Court is whether the Court of Appeals erred in holding that James Robert McCown ("plaintiff")[1] was an independent contractor and in reversing the Industrial Commission's ("Commission") determination that plaintiff was an employee entitled to workers' compensation benefits.

In March 1997 plaintiff filed a claim for workers' compensation benefits for an injury received while re-roofing a house. At the compensation hearing, the deputy commissioner received the following evidence:

In April 1996 defendant Curtis Hines contacted plaintiff about re-roofing a rental house owned by his son, defendant Mike Hines, d/b/a Mike Hines Heating and Air Conditioning. Plaintiff had been doing roofing work for approximately ten years; and plaintiff had previously done roofing work for several people in the community, including Curtis Hines. Plaintiff had also done flooring and carpentry work for Curtis Hines. Plaintiff had no conversation or agreement with either Curtis Hines or Mike Hines about the amount or method of payment for the roofing job before beginning the work. Plaintiff testified that, although he had been paid a flat rate or "by the square" for other roofing jobs, Curtis Hines had paid him by the hour for his prior work. According to plaintiff the rate was $11.00 per hour, and plaintiff assumed that he would be paid in the same manner for roofing the rental house. Curtis Hines testified that he had previously paid plaintiff "by the square" and that he would "not hire anybody by the hour to do contract work"; and Mike Hines assumed that plaintiff would be paid $15.00 per square as he had been paid for past work.

Plaintiff worked on re-roofing the rental house for three days before his accident. Throughout those three days, Curtis Hines and Mike Hines were present only periodically at the work site. Although

---

1. James Robert McCown instituted this action as plaintiff-employee. Upon McCown's subsequent death, the administratrix of his estate, Tammy Lynn McCown, was substituted as the plaintiff. However, for the purposes of clarity, use of the term "plaintiff" in this opinion will refer to James Robert McCown.

McCOWN v. HINES

[353 N.C. 683 (2001)]

he did not feel completely free to leave the work site without getting fired, plaintiff set his own hours and decided when to take lunch. At the work site, plaintiff used his own hammer and nail apron; and plaintiff testified that any other equipment was provided for him. However, Mike Hines claimed that plaintiff also provided his own ladder and shovel. Additionally, Curtis Hines instructed plaintiff to use some old, mismatched shingles; and while Curtis Hines directed the placement of the mismatched shingles on the roof, he did not instruct plaintiff about such details as the number of nails to put in each shingle or how to overlap the shingles.

On 8 April 1996 plaintiff arrived at work and helped another worker unload shingles from a trailer. Curtis Hines arrived at the work site before lunch and instructed plaintiff to tear off the shingles from the other side of the house, and plaintiff complied with Curtis Hines' instruction. Later, Curtis Hines and Mike Hines delivered a truckload of shingles to the work site; and plaintiff complied with Curtis Hines' request to help unload the shingles. Plaintiff then informed Curtis Hines that he needed more tar paper to finish papering the roof before it rained. Curtis Hines gave plaintiff another roll of tar paper and stated, "Here it is. Get it papered in before it rains on you." Later that day, plaintiff fell from the roof of the house and suffered a severe spinal cord injury that left him totally and permanently disabled. The next day plaintiff's father asked Mike Hines to pay plaintiff $170.00 for the work, and Mike Hines wrote a check payable to plaintiff in the amount of $170.00. According to plaintiff he had worked a total of seventeen hours on the job over a three-day period.

On 19 June 1998, based on the evidence presented at the 5 March 1998 hearing, the deputy commissioner concluded that, at the time of the accident, plaintiff was an independent contractor who had contracted to provide roofing services for defendant Mike Hines. The deputy commissioner filed an opinion and award dismissing plaintiff's claim for lack of jurisdiction. On 3 May 1999 the full Commission reversed the deputy commissioner's opinion and award, concluding that plaintiff was hired as an employee by Curtis Hines, acting as an agent for Mike Hines, d/b/a Mike Hines Heating and Air Conditioning Company. The full Commission awarded plaintiff permanent and total disability benefits at the compensation rate of $266.66 per week from 8 April 1996 and continuing for the remainder of his natural life.

On appeal the Court of Appeals reversed the Commission's award of total disability benefits. *McCown v. Hines*, 140 N.C. App. 440, 444, 537 S.E.2d 242, 244-45 (2000). The Court of Appeals held that the Commission erred in its conclusion that plaintiff had satisfied his burden of establishing that an employer-employee relationship existed at the time of the accident. For the reasons that follow, we affirm the decision of the Court of Appeals.

To maintain a proceeding for workers' compensation, the claimant must have been an employee of the party from whom compensation is claimed. *See Youngblood v. North State Ford Truck Sales*, 321 N.C. 380, 383, 364 S.E.2d 433, 437 (1988). Thus, the existence of an employer-employee relationship at the time of the injury constitutes a jurisdictional fact. *See id.* As this Court explained in *Lucas v. Li'l Gen. Stores*, 289 N.C. 212, 218, 221 S.E.2d 257, 261 (1976):

> [T]he finding of a jurisdictional fact by the Industrial Commission is not conclusive upon appeal even though there be evidence in the record to support such finding. The reviewing court has the right, and the duty, to make its own independent findings of such jurisdictional facts from its consideration of all the evidence in the record.

*See also Perkins v. Arkansas Trucking Servs., Inc.*, 351 N.C. 634, 637, 528 S.E.2d 902, 903-04 (2000). Additionally, the claimant bears the burden of proving the existence of an employer-employee relationship at the time of the accident. *See Lucas*, 289 N.C. at 218, 221 S.E.2d at 261.

Whether an employer-employee relationship existed at the time of the injury is to be determined by the application of ordinary common law tests. *See Youngblood*, 321 N.C. at 383, 364 S.E.2d at 437; *Lucas*, 289 N.C. at 219, 221 S.E.2d at 262; *Richards v. Nationwide Homes*, 263 N.C. 295, 302, 139 S.E.2d 645, 650 (1965). Under the common law, an independent contractor "exercises an independent employment and contracts to do certain work according to his own judgment and method, without being subject to his employer except as to the result of his work." *Youngblood*, 321 N.C. at 384, 364 S.E.2d at 437; *see also Hayes v. Board of Trustees of Elon College*, 224 N.C. 11, 15, 29 S.E.2d 137, 140 (1944). In contrast, an employer-employee relationship exists "[w]here the party for whom the work is being done retains the right to control and direct the manner in which the details of the work are to be executed." *Youngblood*, 321 N.C. at

384, 364 S.E.2d at 437; *see also Hayes*, 224 N.C. at 15, 29 S.E.2d at 139-40.

In *Hayes*, 224 N.C. at 16, 29 S.E.2d at 140, this Court identified eight factors to consider in determining which party retains the right of control and, thus, whether the claimant is an independent contractor or an employee:

> The person employed (a) is engaged in an independent business, calling, or occupation; (b) is to have the independent use of his special skill, knowledge, or training in the execution of the work; (c) is doing a specified piece of work at a fixed price or for a lump sum or upon a quantitative basis; (d) is not subject to discharge because he adopts one method of doing the work rather than another; (e) is not in the regular employ of the other contracting party; (f) is free to use such assistants as he may think proper; (g) has full control over such assistants; and (h) selects his own time.

*See also Youngblood*, 321 N.C. at 388-89, 364 S.E.2d at 440 (Exum, C.J., dissenting) (recognizing that the *Hayes* factors are assessed to facilitate the determination of which party retains the right to control and direct the details of the work). No particular one of these factors is controlling in itself, and all the factors are not required. Rather, each factor must be considered along with all other circumstances to determine whether the claimant possessed the degree of independence necessary for classification as an independent contractor. *See Youngblood*, 321 N.C. at 385, 364 S.E.2d at 438; *Hayes*, 224 N.C. at 16, 29 S.E.2d at 140.

Having carefully reviewed the record evidence in this case, we hold that application of the *Hayes* factors tends to show that plaintiff was an independent contractor at the time of the injury. First, plaintiff was engaged in the independent calling of roofing. *See Midgette v. Branning Mfg. Co.*, 150 N.C. 333, 343, 64 S.E. 5, 9 (1909) (citing the "roofing and cornice business" as an example of an independent calling). Plaintiff had been engaged in roofing for ten years and testified that roofing requires a "certain degree of skill and experience" and that he had acquired a familiarity with roofing methods, procedures, and safety precautions. The fact that plaintiff had also performed a variety of other work as a hired laborer, such as carpentry, flooring, or small home repairs, does not diminish his specialized skills and expertise as a roofer. Similarly, the fact that plaintiff did not have a business address or a truck with a company logo is not determinative

of whether plaintiff engaged in a distinct occupation or calling. This Court has previously considered the provision of equipment by the worker as evidence of independence. *Youngblood*, 321 N.C. at 384-85, 364 S.E.2d at 438. Here, Mike Hines claimed that plaintiff provided his own equipment, which plaintiff's father reclaimed after the accident; and plaintiff admitted the possibility that he had provided his own shovel in addition to his hammer and nail apron.

Second, plaintiff had independent use of his special roofing skills and knowledge. Curtis Hines, acting as an agent for his son, required plaintiff to use mismatched shingles and instructed plaintiff as to the placement of the mismatched shingles on the roof. However, these directions amounted to nothing more than aesthetic decisions within the control of the owner. *See, e.g., McCraw v. Calvine Mills, Inc.*, 233 N.C. 524, 527, 64 S.E.2d 658, 660 (1951) (distinguishing the owner's right to control the method of doing the work from the right merely to "require certain definite results conforming to the contract"). Further, Curtis Hines' requests for assistance in unloading the shingles and his comment about papering the roof before it rained were not statements indicative of his control over the details of plaintiff's work. Plaintiff made his own determinations concerning the details of his roofing work, such as the number of nails to put in each shingle and the proper overlapping of the shingles. In short, Curtis Hines did not interfere at any point with plaintiff's own exercise of his specialized knowledge regarding roofing methods and procedures.

Third, plaintiff failed to satisfy his burden of proof concerning the manner in which he was paid for his work. Plaintiff contends that Curtis Hines had paid him an hourly wage of $11.00 for his past work. Plaintiff admitted that he did not discuss with Curtis Hines the payment for this job and that he simply assumed that he would be paid $11.00 per hour. However, Curtis Hines testified that he would not pay anyone by the hour for contract work. Documents tendered into evidence showed that plaintiff had previously charged Curtis Hines by the square or job for roofing work, and plaintiff admitted that other customers had paid him by the square for roofing work. Further, Gary Beasley, the roofer who completed the roofing work on Mike Hines' rental house, testified that he was paid by the square of shingles for his work and that roofers seldom get paid on an hourly basis. Finally, Mike Hines testified that he paid plaintiff $170.00 as requested by plaintiff's father. According to Mike Hines, $170.00 seemed like "a pretty fair price"; and, considering plaintiff's physical condition, he did not want to contest the requested amount. In light of this con-

flicting evidence, especially considering plaintiff's admission that he never discussed his wages with Curtis Hines, plaintiff failed to establish that he was paid by the hour rather than on a quantitative basis.

Fourth, plaintiff was not subject to discharge for adopting one method of doing the work rather than another. Defendants did not have any personal experience in or knowledge about the installation of roofs; and plaintiff was permitted full discretion in the details of his roofing work. Further, both defendants were absent from the work site for long periods of time, leaving plaintiff alone to perform his roofing duties; and neither defendant ever climbed onto the roof to inspect whether plaintiff's work conformed to certain methods or standards.

Fifth, plaintiff was not in the regular employ of either Curtis Hines or Mike Hines. Plaintiff had never performed any work for Mike Hines prior to this roofing job on the rental house, and plaintiff was hired only for the limited purpose of re-roofing the rental house. Further, although plaintiff had done some work for Curtis Hines in the past, that work was only periodic as Curtis Hines needed him. Plaintiff's last job for Curtis Hines prior to working on Mike Hines' house had been in August 1995, eight months before the accident. Plaintiff also worked for other people in the community between jobs with Curtis Hines.

Sixth and Seventh, plaintiff failed to satisfy his burden of proof concerning his freedom to use and control assistants. At most plaintiff's evidence showed that he did not have the funds to pay an assistant. Plaintiff did not testify as to his freedom to hire and supervise any necessary assistants, and Mike Hines testified that he never discussed with plaintiff the possibility of using any assistants. Thus, in light of the lack of any evidence concerning the use of assistants, plaintiff failed to establish that he was not permitted to hire and supervise assistants.

Eighth, and finally, plaintiff selected his own time. Plaintiff testified that neither defendant instructed him when to arrive in the morning, when to take lunch, or when to leave at the end of the day. Further, defendants were absent from the work site for long periods of time, leaving plaintiff to work independently and unsupervised. Plaintiff testified that he did not feel free to leave the work site anytime he wanted to because "if [the work] wasn't done, I would have been fired." This assertion, however, was a recognition of his

obligation to complete the roofing work in a timely manner rather than a statement that Curtis Hines or Mike Hines controlled his hours.

After applying the *Hayes* factors to the record evidence in this case, we hold that plaintiff possessed the independence necessary for classification as an independent contractor at the time of the accidental injury. The evidence was uncontradicted that plaintiff was engaged in the independent calling of roofing, that plaintiff had independent use of his specialized skills and knowledge without any requirements that he adopt one particular roofing method, that plaintiff was hired only for a short-term roofing job, and that plaintiff was free to set his own hours. Absent an employer-employee relationship, the Commission lacked jurisdiction over plaintiff's claim. Accordingly, we hold that the Court of Appeals properly reversed the full Commission's opinion and award concluding that an employer-employee relationship existed at the time of the injury.

AFFIRMED.