***********
The Full Commission has reviewed the Deputy Commissioner's Opinion and Award based on the record of the proceedings before the Deputy Commissioner. The appealing party has not shown good grounds to reconsider the evidence, receive further evidence, rehear the parties or their representatives, and having reviewed the competent evidence of record, the Full Commission hereby affirms the Opinion and Award with minor modifications.
The Full Commission finds as fact and concludes as matters of law the following which were entered into by the parties prior to the hearing in a Pre-Trial Agreement and at the hearing as
 STIPULATIONS
1. The date of the accident is December 27, 2000.
2. The average weekly wage is to be determined at the hearing.
3. This is a claim for temporary total disability benefits and medical care.
4. The parties stipulated the following exhibits into evidence:
• Stipulated Exhibit 1 — Subcontractor safety rules;
• Stipulated Exhibit 2 — Check registers;
• Stipulated Exhibit 3 — Insurance documents;
 • Stipulated Exhibit 4 — Plaintiff's Responses to Defendants' First Set of Pre-Hearing Interrogatories and Request for Production of Documents;
 • Stipulated Exhibit 5 — Plaintiff's Supplemental Answers to Interrogatory #1;
 • Stipulated Exhibit 6 — Plaintiff's Answers to Interrogatory #2;
 • Stipulated Exhibit 7 — Plaintiff's 1999 federal tax return;
• Stipulated Exhibit 8 — Plaintiff's 1999 state tax return;
• Stipulated Exhibit 9 — Plaintiff's W2s and 1099s for 2000;
 • Stipulated Exhibit 10 — Plaintiff's 2000 federal and state tax returns;
• Stipulated Exhibit 11 — Industrial Commission forms; and
 • Stipulated Exhibit 12 — A packet of plaintiff's medical records.
 ***********
Based upon all the competent evidence of record, the Full Commission makes the following additional
 FINDINGS OF FACT
1. Defendant Richard Gaylor Homes, Inc. (hereafter "Gaylor Homes") is a building/developing business. Gaylor Homes regularly employed three or more employees at all times relevant to this matter.
2. At the time of the deputy commissioner hearing, plaintiff was 54 years old, born March 9, 1947. Prior to moving to North Carolina plaintiff had worked in the construction industry. When plaintiff moved to North Carolina in 1996, plaintiff was employed by several builders as a salaried superintendent. In mid 1999 plaintiff attempted to go into business with Mark Sebulsky framing houses but that endeavor was unsuccessful, as plaintiff did not make enough money. Plaintiff then returned to Heritage Homes as a salaried supervisor for a couple of months. Thereafter, he quit Heritage and contacted defendant Gaylor Homes and asked to perform punch work.
3. Gaylor Homes told plaintiff that they did not have work sufficient to give him full time punch work but could provide approximately 25 hours worth of work, or two to three days of work a week. During this timeframe, plaintiff was also performing punch and trim work for Magnolia Homes. Plaintiff stopped performing this type of work for Magnolia Homes in mid June 2000.
4. Plaintiff's duties with Gaylor Homes included working with supervisors, executing punch lists, walking inspections, and warranty work. Plaintiff's duties required him to make minor repairs, move trash, and deal with city inspectors, sub-contractors, and homeowners. Plaintiff performed sheetrock, paint, siding, gutter, window sash, hard wood floor, cabinet, door, door adjustment, and molding work.
5. At the time plaintiff began working with Gaylor Homes, both parties considered plaintiff an independent contractor. Plaintiff was required to obtain workers' compensation insurance and, indeed, did so. Plaintiff, however, chose to exclude himself from coverage on his policy. Plaintiff provided a certificate of insurance to Gaylor Homes. It is clear at this point that both parties considered plaintiff an independent contractor and that plaintiff decided to forego workers' compensation coverage for himself.
6. Plaintiff provided his own tools, caulking, equipment, truck, and cell phone. All materials other than caulking were supplied by Gaylor Homes. Plaintiff did not work set hours, and his hours of work were often dictated by the inspection schedule or the homeowners' schedules. Plaintiff was told what to do but not how to do it.
7. Plaintiff had independent use of special skill, knowledge and training in the execution of the work he performed for Gaylor Homes. It was the testimony of both plaintiff and defendant that plaintiff used his skill and training independently without the necessity of supervision.
8. Gaylor Homes did not provide plaintiff with health insurance, life insurance, paid holidays or other benefits. Plaintiff was self-employed for tax purposes in 1999 and 2000, and received a 1099 from Gaylor Homes. Plaintiff's business records reflect that he took deductions from his taxes for business expenses.
9. Plaintiff was paid $25.00 per hour. Plaintiff was paid by the hour due to the changing and unpredictable nature of the work required on each house. Plaintiff was free to hire an assistant if he so desired. Plaintiff did not hire an assistant because he did not believe he had the funds to do so. Plaintiff testified that, if he had needed assistance, he would have gone to Gaylor Homes and asked for it. Jim Miller, the individual who is now performing punch and warranty work for Gaylor Homes, is also paid $25.00 per hour by Gaylor Homes as well as by other general contractors for whom he works. Mr. Miller hired an assistant to work with him on the Gaylor Homes properties.
10. Plaintiff applied for a job as a supervisor/superintendent with Gaylor Homes in the summer of 2000. Plaintiff interviewed for the position but was not chosen. John B. Robinson was given the job instead.
11. In June or July 2000 the supervisor of all the construction performed by Gaylor Homes left the employ of Gaylor Homes to return to Texas. At that time, Brad Hood was a supervisor and John B. Robinson was hired as a supervisor. In September 2000, Bonner Gaylor, the son of Richard Gaylor, was also brought into the business as a supervisor.
12. By November 2000, plaintiff's work with Gaylor Homes had evolved into approximately 40 hours of work each week. In November, Kim Lintzenich of Gaylor Homes told plaintiff that they would be able to keep plaintiff busy full time in November and hoped that he would keep that in mind and be available. In November, Gaylor Homes had two supervisors, Brad Hood and Bonner Gaylor. Bonner Gaylor, however, was out of work due to back surgery.
On December 27, 2000, plaintiff was performing his regular work when he fell off a ladder and broke both legs and his right elbow. Plaintiff spent five days in intensive care and nine days at the rehabilitation center at Wake Memorial Hospital in Wake County. On September 18, 2000, Dr. William Obremskey performed an arthroscopy of plaintiff's knee. At the time of the close of the record, plaintiff was not yet at maximum medical improvement and was still receiving treatment from Dr. Obremskey.
Although plaintiff's workload and the regularity of his hours for Gaylor Homes may have increased in November and December 2000, the nature of plaintiff's work and of plaintiff's relation to Gaylor Homes did not. Plaintiff continued to perform the same type of duties. He continued to work for Gaylor Homes as a professional independent contractor, not as an employee.
Plaintiff suggests that he was performing duties as a superintendent in November and December 2000, and therefore the Commission must find that he was an "employee" subject to the direction and control of Gaylord Homes. Although the evidence suggests that plaintiff undertook additional work responsibility during the time period that Gaylord Homes operated without one of its superintendents, the evidence does not support the conclusion that plaintiff became an "employee," or was under the direction and control of Gaylord Homes during this time period or, in particular, at the time and place of his injury.
16. On December 27, 2000, plaintiff was an independent contractor and was not an employee of defendant Gaylor Homes. Plaintiff was performing his regular, independent contractor punch list duties at the time and place of his injury.
 ***********
The foregoing stipulations and findings of fact engender the following additional
 CONCLUSIONS OF LAW
1. On December 27, 2000, plaintiff was an independent contractor and was not an employee of defendant Gaylor Homes. McCown v. Hines,353 N.C. 683, 549 S.E.2d 175 (2001). "The doctrine of liberal construction [of the Workers' Compensation Act] arises out of the Act itself, and relates to cases falling within the purview of the Act."Hayes v. Board of Trustees of Elon College, 224 N.C. 11, 19, 29 S.E.2d 137
(1944). The doctrine is one "benefiting the injured party only in those cases where the Act applies . . . [and] cannot be invoked to determine when the Act does apply." Id. In Hayes, the North Carolina Supreme Court recited eight factors which may be considered when determining whether a person is an "independent contractor" under the Workers' Compensation Act:
 "The person employed (a) is engaged in an independent business, calling, or occupation; (b) is to have the independent use of his special skill, knowledge, or training in the execution of the work; (c) is doing a specified piece of work at a fixed price or for a lump sum or upon a quantitative basis; (d) is not subject to discharge because he adopts one method of doing the work rather than another; (e) is not in the regular employ of the other contracting party; (f) is free to use such assistants as he may think proper; (g) has full control over such assistants; and (h) selects his own time."
Id. None of these factors is controlling, but each is to be considered in determining the relationship between the parties. Id. The essential issue is whether the alleged employer has the right to control the method and means by which the alleged employee performs the work. Id.; Fulcherby Wall v. Willard's Cab Co., 132 N.C. App. 74, 511 S.E.2d 9 (1999); seealso McCown, supra. In this case, the evidence is that plaintiff was engaged in his own trade, primarily performing punch list work where he independently used his skill, knowledge, and training to accomplish the items on the punch list. Plaintiff was paid by the hour, and, although at the time of his injury he was primarily working for Gaylor Homes, he had in the past worked for other contractors and was free to work for other contractors. Gaylor Homes wanted a final product that was pleasing to their homeowner-customer. There is insufficient evidence to suggest that Gaylor controlled the method and means of performing the work, or that plaintiff was subject to discharge because he sought to perform the work in a particular way. Although plaintiff did not use any assistants, he was free to employ assistants, and other similarly employed subcontractors did employ assistants. Finally, the time of plaintiff's work was controlled by plaintiff, the homeowner, or others. Gaylor Homes wanted the work accomplished, but did not direct the hours that plaintiff worked. Under the circumstances of this case, plaintiff was an independent contractor and his injury is not subject to the Workers' Compensation Act. McCown, supra. Accordingly, plaintiff is not entitled to workers' compensation benefits.
 ***********
The foregoing stipulations, findings of fact and conclusions of law engender the following
 ORDER
1. Plaintiff's claim is DENIED.
2. Each side shall bear its own costs. However, defendants shall pay an expert witness fee in the amount of $500.00 for the deposition of Dr. Obremskey.
 S/______________ RENE C. RIGGSBEE COMMISSIONER
CONCURRING:
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER