* * * * * * * * * * *
The Full Commission reviewed the prior Opinion and Award, based upon the record of the proceedings before the Deputy Commissioner and the briefs and oral argument before the Full Commission. The appealing party has not shown good grounds to reconsider the evidence; receive further evidence or rehear the parties or their representatives; or amend the Opinion and Award. Accordingly, the Full Commission affirms, with modifications, the Opinion and Award of the Deputy Commissioner.
 * * * * * * * * * * *
No signed Pre-trial Agreement was submitted and no stipulations were entered into in this matter at the hearing before the Deputy Commissioner.
 * * * * * * * * * * *
The following were marked and received into evidence as:
 EXHIBITS
1. Plaintiff's Exhibit No. 1 — Lorrie Bradley's Check Register;
2. Plaintiff's Exhibit No. 2 — Photocopy of a business card; and
3. Plaintiff's Exhibit No. 3 — Medical Records and bills from Durham.
Regional Hospital and UNC Hospitals, NCIC forms, and defendant's first and second set of interrogatories and request for production of documents.
 * * * * * * * * * * *
Based upon all the competent evidence of record, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff is a Honduran national who only speaks Spanish and now resides in Honduras. At the time of the hearing before the Deputy Commissioner, plaintiff was 38 years old and lived with his wife and two children. Plaintiff's past work history includes work as a mechanic and a welder.
2. Defendant employed plaintiff as a mechanic and a welder beginning in 1999. Plaintiff continued to work for defendant through May 20, 2004.
3. Based on defendant's answers to interrogatories, defendant incorporated on November 10, 2004, as Nelson's Auto Salvage and Towing, Inc. with at least two titled corporate officers, Nelson Cabrera Banegas and Walter Cabrera, and another potential untitled officer named Jose Eduardo Manzota-Lopez, who was paid a salary for his employment with the corporation. In the responses to the interrogatories, defendant indicated that the corporation obtained workers' compensation insurance effective on January 13, 2005.
4. On May 20, 2004, plaintiff was working on three wreckers for defendant, cutting a piece of metal when an explosion occurred. Hot hydraulic oil spilled out and splashed him on his face, neck and arms. His supervisor, Nelson Cabrera, saw plaintiff after it happened and told another employee to take plaintiff to the emergency room. Plaintiff's co-worker, Roger Adolfo Dehai, took him to Regional Hospital in Durham. Plaintiff was diagnosed with second-degree burns on his face, arms and neck. At the hospital, plaintiff received first aid and was then transferred by ambulance to UNC Hospital in Chapel Hill, where he was admitted and treated for several days, until he was released on May 25, 2004.
5. The Full Commission finds that defendant had actual notice of the accident at or about the time it occurred and was not prejudiced by any delay in receiving written notice of the injury.
6. Upon his release from UNC Hospital in Chapel Hill, plaintiff presented to Michael D. Peck, M.D. for continued care of his burns beginning on June 15, 2004. Dr. Peck had also treated plaintiff while he was a patient at UNC Hospital. Dr. Peck is the Director of the Jaycee Burn Center in Chapel Hill, North Carolina and is also a professor of surgery at the University of North Carolina at Chapel Hill. Dr. Peck is board-certified in general surgery and surgical critical care.
7. Dr. Peck testified that plaintiff had second-degree burns, which are burns that go part way through the skin but not all the way through. According to Dr. Peck, second-degree burns take two to three weeks to heal, but heal on their own without the need for surgery and without the need for skin grafting.
8. Dr. Peck last examined plaintiff on December 7, 2004, at which time he observed that plaintiff had very thick scar tissue growing on his left lower lip, almost near the corner of the lip. Dr. Peck opined that plaintiff's scar tissue seemed to have grown beyond the area of the original injury and that it is characteristic of a keloid scar. A keloid scar is characterized by an exuberant or abundant formation of the type of molecule that builds up the skin and is characterized by a change in color. However, Dr. Peck opined that the scar would probably not get any worse.
9. On December 20, 2004, plaintiff presented to Dr. Charles S. Hultman, a plastic surgeon at UNC Hospitals. Dr. Hultman recommended the use of steroids for plaintiff's scar and would consider surgery only as a last resort.
10. With regard to plaintiff's relationship to defendant, the Full Commission finds that there is insufficient evidence in the record to support a finding that plaintiff was engaged in an independent business calling or occupation. There is no evidence that plaintiff controlled his own work or that plaintiff ever had any assistants, had the discretion to hire assistants or that he would have any control over any such assistants.
11. At the hearing before the Deputy Commissioner, Ms. Lorrie Bradley, whose car plaintiff had repaired testified that plaintiff specifically asked her to wait for him until he finished work at defendant's location, at which time he would inspect her car. Ms. Bradley's testimony supports that of plaintiff with regard to the fact that plaintiff did not control his own work. When Ms. Bradley arrived, she, in fact, waited for him until he finished his work with defendant, and only then was he able to meet with her. Ms. Bradley further testified that she observed five or more individuals working at defendant's place of business. The Full Commission finds Ms. Bradley's testimony to be credible and that she is a disinterested and impartial witness.
12. Mr. Guillermo Rodriguez, plaintiff's former roommate testified at the hearing before the Deputy Commission that he had visited plaintiff at defendant's place of business and had observed ten or more individuals working.
13. Speaking through an interpreter at his deposition, plaintiff testified that there were 15 or 16 people working for defendant on May 20, 2004. Defendant offered no witnesses or documentary evidence to contradict plaintiff's testimony on this issue.
14. The Full Commission finds the testimony of plaintiff, Ms. Bradley, and Mr. Guillermo Rodriguez to be credible in showing that defendant regularly employs three or more employees.
15. Based on the competent evidence of record, the Full Commission finds that at the time of his injury, plaintiff was a regular employee of defendant who worked six days a week on a salaried basis and not on a piece rate, lump sum, or other quantitative basis. Plaintiff was paid a flat rate salary of $600.00 per week that did not change regardless of the work. Defendant offered no wage information for plaintiff and therefore, the Full Commission finds plaintiff's average weekly wage to be $600.00, yielding a compensation rate of $400.00.
16. On June 29, 2004, Dr. Peck released plaintiff to return to work. On August 17, 2004, Dr. Peck added the following restrictions: plaintiff should stay away from the sun, not work outside, and work in a room temperature environment between 60 and 85 degrees. When plaintiff again presented to Dr. Peck on September 14, 2004, Dr. Peck noted plaintiff's scar on his lip and continued the work restrictions.
17. During his deposition on September 13, 2005, Dr. Peck testified that he would continue plaintiff's work restrictions based on his sensitivity to heat and light. Plaintiff testified in his deposition that whenever he went outside, his skin became very itchy. Dr. Peck confirmed that it is typical for a burn victim to experience sun sensitivity and sensitivity to any kind of heat, which causes discomfort in the burned areas, oftentimes itching.
18. Plaintiff has returned to Honduras and testified in his August 23, 2005, deposition that he has sought employment but has been unable to find suitable employment there within his restrictions, which the Full Commission finds as fact. Plaintiff testified that he can only work as a mechanic and has been unable to find work because of the itching of his skin whenever he is outside.
19. The Full Commission finds that plaintiff has met his burden of proving disability due to his work restrictions, limited experience and lack of suitable employment opportunities in Honduras. The defendants failed to produce evidence that suitable jobs are available for the plaintiff and that he is capable of obtaining them.
20. As observed at the hearing before the Full Commission, plaintiff has a thick scar on his left lower lip, near the corner of his mouth and scarring on his neck and left arm. His neck has changes in coloration with permanent changes in skin color. As for his arm, plaintiff has changes in pigmentation, and a decrease in skin color secondary to the burn injury. There is a lightness of the skin and it is somewhat mottled.
21. The Full Commission finds that plaintiff's scarring does not warrant an award for disfigurement, as it does not rise to the level of being so serious that it hampers or handicaps the plaintiff in his earnings or in securing employment.
22. Defendant has failed to submit any evidence to support its defense in the denial of this claim.
23. The Full Commission finds that on May 20, 2004, defendant had three or more employees, was subject to the North Carolina Workers' Compensation Act, and failed to have workers' compensation insurance to cover its employees.
24. Plaintiff testified that a man he knew as Nelson Cabrera hired him. A business card for Nelson's Auto Salvage and Towing Service that is marked as Plaintiff's Exhibit No. 2 notes Nelson Cabrera to be President. Nelson Cabrera was not served individually in this matter.
25. Defendant has defended this claim without reasonable grounds and the defense is based in stubborn and unfounded litigiousness.
 * * * * * * * * * * *
Based upon the foregoing Stipulations and Findings of Fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. At all relevant times, plaintiff was a regular employee of defendant within the meaning of the North Carolina Workers' Compensation Act and defendant employed three or more employees at the time of plaintiff's injury by accident on May 20, 2004. Therefore, the parties are subject to and bound by the provisions of the Workers' Compensation Act. N.C. Gen. Stat. § 97-2; McCown v. Hines, 353 N.C. 683, 687,549 S.E. 2d 175, 177 (2001).
2. Disability is defined by the Act as "the impairment of the injured employee's earning capacity [as a result of a workplace injury] rather than physical disablement." N.C. Gen. Stat. § 97-2(9). Although plaintiff is capable of some work, employment would be futile because of his work restrictions, limited experience, education and a lack of suitable employment opportunities in Honduras. Russell v. Lowes ProductDistribution, 108 N.C. App. 762, 765, 425 S.E.2d 454, 457 (1993). Plaintiff testified that he could only work as a mechanic and that he was no longer able to do that because of his sensitivity to the sun.
3. Plaintiff suffered an injury by accident arising out of and in the course of his employment with defendant on May 20, 2004, resulting in injury to his face, neck and arms. N.C. Gen. Stat. § 97-2.
4. As a result of plaintiff's compensable injury by accident, he is entitled to have defendant pay temporary total disability compensation at the rate of $400.00 per week from May 21, 2004, and continuing until further Order of the Industrial Commission. N.C. Gen. Stat. § 97-29.
5. As a result of plaintiff's compensable injury by accident, plaintiff is entitled to have defendant pay for all medical treatment related to his injury by accident on May 20, 2004, which is reasonably necessary to effect a cure, give relief, or tends to lessen plaintiff's period of disability. N.C. Gen. Stat. §§ 97-2(19), 97-25.
6. Any employer required to secure the payment of compensation who refuses or neglects to secure such compensation shall be punished by a penalty of one dollar ($1.00) for each employee, but not less than fifty dollars ($50.00) nor more than one hundred dollars ($100.00) for each day of such refusal or neglect, and until the same ceases. N.C. Gen. Stat. § 97-94(b).
7. Any person who had the ability and authority to bring his business into compliance with N.C. Gen. Stat. § 97-93 and may be assessed a penalty equal to 100% of the amount of compensation due Defendant's employees injured during the time his business failed to comply with N.C. Gen. Stat. §§ 97-93 and 97-94(d).
8. Defendant has defended this claim without reasonable grounds pursuant to N.C. Gen. Stat. § 97-88.1.
 * * * * * * * * * * *
Based upon the foregoing Stipulations, Findings of Fact and Conclusions of Law, the Full Commission enters the following:
 AWARD
1. Defendant shall pay temporary total disability compensation to plaintiff at the rate of $400.00 per week for the period from May 21, 2004 to the present and continuing until Order of the Industrial Commission.
2. Defendant shall pay all medical expenses incurred by plaintiff as a result of his compensable injury on May 20, 2004, which is reasonably necessary to effect a cure, give relief, or tends to lessen plaintiff's period of disability.
3. For defendant's unreasonable defense of this claim and then failing to submit any evidence for the record, defendant shall pay the costs plaintiff incurred in defending this action, including a reasonable attorney's fee in the amount of twenty-five percent (25%) of the compensation due plaintiff from May 21, 2004, and continuing until Order of the Industrial Commission. To the extent that the attorney's fee has accrued, it shall be paid in a lump sum directly to Scudder Hedrick. Thereafter, an amount equal to 25% of the continuing compensation for total disability due plaintiff shall be paid to plaintiff's counsel. The attorney's fee awarded herein shall be paid in addition to and shall not be deducted from the compensation due plaintiff.
4. Plaintiff's counsel shall send a copy of this decision to all of plaintiff's healthcare providers. The healthcare providers with outstanding bills in this matter shall not seek to obtain collection of these bills from Jorge Rodriguez-Carias. Collection should be directed to the Defendant Nelson's Auto Salvage and Towing Service, Attn: Nelson Cabrera Banegas, 923 Harvest Street, Durham, NC 27704. Failure to comply with this order by the healthcare providers and their collection agencies will result in the initiation of contempt proceedings against persons in violation of this order.
5. Pursuant to N.C. Gen. Stat. § 97-94(b), a penalty of fifty dollars ($50.00) per day is assessed against defendant for failing to secure workers' compensation insurance on May 20, 2004. Pursuant to the Order set forth below, a determination of the amount shall be determined at the penalty hearing before the Deputy Commissioner.
6. Defendant shall pay all costs of this action.
 * * * * * * * * * * * ORDER
It is hereby ordered that the penalty phase of this case (PH-1218) is severed and the penalty matter is remanded to Deputy Commissioner George R. Hall, III, for a new hearing and the issuance of an Opinion and Award regarding defendant's refusal or neglect to secure compensation under the Act pursuant to N.C. Gen. State § 97-94(b) and for a determination regarding who had the ability and authority to bring defendant into compliance with the Act and whether that party or parties are subject to civil penalties pursuant to N.C. Gen. State § 97-94(d). Based on the evidence of record, Nelson Cabrera Banegas, Walter Cabrera, and Jose Eduardo Manzota-Lopez shall be added to PH-1218 for further hearing.
This the ___ day of November 2006.
 S/_____________________ PAMELA T. YOUNG COMMISSIONER
CONCURRING:
 S/_____________________ THOMAS J. BOLCH COMMISSIONER
 S/_____________________ BUCK LATTIMORE CHAIRMAN