An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA14-1001

Filed: 5 May 2015

North Carolina Industrial Commission, I.C. No. X93563

RONALD DEAN STATON, Plaintiff,

v.

JOSEY LUMBER CO., INC.,

and

FORESTRY MUTUAL INSURANCE CO., Carrier, Defendants.

Appeal by plaintiff from opinion and award entered 17 June 2014 by the North Carolina Industrial Commission. Heard in the Court of Appeals 4 February 2015.

*Riddle & Brantley, L.L.P., by Jonathan M. Smith, for plaintiff-appellant.*

*Lewis & Roberts, P.L.L.C., by Sarah C. Blair and J. Timothy Wilson, for defendant-appellees.*

DIETZ, Judge.

Plaintiff Ronald Dean Staton injured his left leg and foot when he fell off scaffolding while welding at Josey Lumber Company. Staton filed a workers' compensation claim with the North Carolina Industrial Commission, but the Commission found that Staton was an independent contractor, not an employee of

Josey Lumber. Thus, the Commission concluded that it did not have jurisdiction to hear the claim.

Staton appeals to this Court arguing that the Commission erred in determining that he was an independent contractor and not an employee.

We affirm. Staton worked most of his life as a contract welder. He identified himself as an independent welding business on social media. Josey Lumber hired him to perform a specific project estimated to last 2-3 weeks. The company did not require him to punch in and out on the time clock used by the company's employees and he was not bound by the normal operating hours of the mill. He brought most of his own welding equipment. He used his own skill and expertise and his welding work was not done under the supervision or instruction of anyone at Josey Lumber. In light of these facts, we hold that Staton was an independent contractor and not an employee of Josey Lumber. Accordingly, we affirm the Industrial Commission's conclusion that it lacked jurisdiction to hear Staton's workers' compensation claim.

### Facts and Procedural History

Plaintiff Ronald Dean Staton earned his basic welding certificate from Halifax Community College in 1995 and has worked as a welder ever since. Staton mostly worked shutdown jobs, where a company would temporarily close down in order for contractors to make necessary repairs and upkeep to machinery at the plant. The shutdown jobs lasted a few days and then Staton would move on to the next job. In

performing this type of work, Staton typically would work four or five months out of the year.

Staton called himself a contractor on his Facebook page. He stated that "[m]ost everyone knows I'm a welder. I travel alot chasing jobs. I do shutdown work. That is when a company takes off a week or so and contractors go in and fix whatever is broke."

Josey Lumber Company is a hardwood sawmill located in Scotland Neck, North Carolina. Joey Josey, the founder and president of the company, works with his two sons, Tripp and Logan, who both serve as vice presidents. Josey Lumber maintains about thirty full-time employees consisting of general laborers, machine operators, and maintenance supervisors. The employees work set hours Monday through Friday regardless of the weather. Josey Lumber has never employed a full-time welder.

Looking to expand the business, Josey Lumber purchased a hopper, boiler, and drying kiln to be installed on the property. Josey Lumber purchased the boiler and drying kiln directly from the manufacturing companies with the purchase price including installation by the company. The hopper, however, was purchased second-hand at an auction, and Josey Lumber needed a welder to reassemble and install the hopper on its property.

In early March 2012, a friend of Staton's informed him that Josey Lumber Company may need to hire a welder for an upcoming project. Staton spoke with Joey Josey, who informed him that he was indeed looking for a welder to install a hopper on the property. Staton agreed to perform the job for $15.00 an hour. Staton did not fill out any paperwork, but Joey Josey told him to come in the next day to start work.

The next morning, Staton arrived at Josey Lumber with his own welding shield, chipping hammer, wire brush, and bucket, although he used other welding equipment provided by Josey Lumber. Joey Josey showed him the hopper and explained the order in which he wanted Staton to weld the rings. Staton mostly worked alone on the hopper, but the Joseys stopped by every so often to make sure he had everything he needed. Staton did not punch in and out on a time clock used by Josey Lumber employees. Instead, he kept track of his own hours worked and reported the totals to Joey or Tripp Josey for payment. Staton also did not work the same operating hours as regular mill employees, but started his welding work later in the day and worked on the weekends when the mill was closed.

On 7 March 2012, around 4:20 p.m., Staton was working alone on the hopper welding project after the mill had closed for the day. As he sat on top of the scaffolding finishing a weld, he slipped and fell about twenty feet to the ground. He landed feet first injuring his left leg and foot and was unable to get up. Staton lay on the ground for about thirty minutes before Tripp Josey found him and called for help. An

ambulance took Staton to the local hospital where he was then airlifted to Vidant Medical Center in Greenville, North Carolina.

At the hospital, Staton was diagnosed with a left calcaneus fracture extending to the anterior, middle, and posterior subtalar joints; laceration of his left leg; and a lumbar strain. In September 2012, Staton also was diagnosed with a medial meniscal tear and a significant ACL strain resulting from the fall in March. In October 2012, Staton underwent a left knee arthroscopy which revealed a complete rupture of his anterior cruciate ligament.

Staton filed a workers' compensation claim on 16 March 2012. On 10 April 2012, Josey Lumber denied Staton's workers' compensation claim asserting no employer-employee relationship.

On 17 June 2014, the Full Commission filed its opinion and award concluding that no employer-employee relationship existed and that the Industrial Commission did not have jurisdiction to hear Staton's claim. Staton appealed to this Court.

**Analysis**

Staton argues that the Industrial Commission erred in concluding that he was not an employee of Josey Lumber. For the reasons discussed below, we affirm the decision of the Industrial Commission.

Ordinarily, on appeal of an opinion and award from the Industrial Commission, our review is limited to determining "whether competent evidence

supports the Commission's findings of fact and whether the findings support the Commission's conclusions of law." *Estrada v. Timber Structures, Inc.*, ___ N.C. App. ___, ___, 765 S.E.2d 546, 548 (2014) (internal quotation marks omitted). However, "[t]o be entitled to maintain a proceeding for workers' compensation, the claimant must be, in fact and in law, an employee of the party from whom compensation is claimed." *Youngblood v. N. State Ford Truck Sales*, 321 N.C. 380, 383, 364 S.E.2d 433, 437 (1988). Whether an employer-employee relationship exists in a workers' compensation case is a jurisdictional question. *See id.* "When issues of jurisdiction arise, the jurisdictional facts found by the Commission, though supported by competent evidence, are not binding on this Court, and we are required to make independent findings with respect to jurisdictional facts." *Williams v. ARL, Inc.*, 133 N.C. App. 625, 628, 516 S.E.2d 187, 190 (1999) (internal quotation marks omitted). The claimant bears the burden of demonstrating that an employer-employee relationship existed at the time of the accident. *McCown v. Hines*, 353 N.C. 683, 686, 549 S.E.2d 175, 177 (2001).

In determining whether a person is an employee or an independent contractor, our Supreme Court has stated, "[t]he vital test is to be found in the fact that the employer has or has not retained the right of control or superintendence over the contractor or employee as to details." *Hayes v. Bd. of Trs. of Elon Coll.*, 224 N.C. 11,

15, 29 S.E.2d 137, 140 (1944). The Court also set out eight factors to consider, namely whether:

> The person employed (a) is engaged in an independent business, calling, or occupation; (b) is to have the independent use of his special skill, knowledge, or training in the execution of the work; (c) is doing a specified piece of work at a fixed price or for a lump sum or upon a quantitative basis; (d) is not subject to discharge because he adopts one method of doing the work rather than another; (e) is not in the regular employ of the other contracting party; (f) is free to use such assistants as he may think proper; (g) has full control over such assistants; and (h) selects his own time.

*Id*. at 16, 29 S.E.2d at 140. No one factor is determinative and all the factors are not required, but "[t]hey are considered along with all other circumstances to determine whether in fact" a person is an independent contractor or employee. *Id.*

Applying the *Hayes* factors to this case, we hold that the Industrial Commission properly determined that Staton was an independent contractor at the time of his injury. First, Staton was engaged in the independent calling of welding. He went to school to obtain a certificate in welding and worked as a contract welder for seventeen years before his injury. On Staton's own Facebook page he stated, "[m]ost everyone knows I'm a welder. . . . I do shutdown work. That is when a company takes off a week or so and contractors go in and fix whatever is broke."

Second, Plaintiff had independent use of his special welding skills, knowledge, and training. Joey Josey instructed Staton on the order of which he wanted items

welded, but did not specify how he wanted Staton to perform the welding work. Joey Josey's directions simply stated the priority in which to weld and did not interfere with Staton's own exercise of his specialized knowledge regarding welding methods and procedures. *See McCown*, 353 N.C. at 687, 549 S.E.2d at 178. Tripp Josey testified that he did not have the knowledge to supervise Staton in his welding work, stating, "I don't know how to do – can't tell somebody how to do something I don't know." He also stated that both his father and brother were not capable of instructing Staton on how to weld. Staton also testified that Joey Josey relied on his skills as a welder to get the job done.

Third, Staton was paid in a manner that indicates he was an independent contractor, not an employee. Tripp Josey testified that he expected the hopper project to last about two weeks, but did not have a definitive time period. Josey Lumber paid Staton at a rate of $15.00 an hour. Although being paid an hourly rate is more suggestive of an employee, this is not determinative. *See Youngblood*, 321 N.C. at 385, 364 S.E.2d at 438. Many consultants and contractors bill their clients by the hour. Here, all employees of the mill tracked their hours by punching in and out using a time clock. By contrast, Staton kept track of his own hours and reported them to Josey Lumber for payment. This different treatment suggests Staton was an independent contractor, not an employee.

Fourth, Staton was not subject to discharge for adopting one method of welding over another. The Joseys did not have any personal knowledge of welding techniques or experience in welding. As stated earlier, Tripp Josey testified that he was not capable of instructing anyone on welding or critiquing someone's welding methods. The Joseys never inspected the hopper to determine whether Staton's work complied with certain welding methods and Staton had full discretion in the manner in which to perform the welding. Staton testified that he mostly worked alone on the hopper with the Joseys only stopping by to check on him to make sure he had the supplies he needed.

Fifth, Staton was not in the regular employ of Josey Lumber. Staton had never worked for Josey Lumber before and he was hired to complete one project—welding the hopper. Staton testified that he was led to believe that the position could be permanent with the installation of the boiler and drying kiln as well. However, "the parties' own conclusion about their legal relationship is not binding on the court." *Lemmerman v. A.T. Williams Oil Co.*, 318 N.C. 577, 584, 350 S.E.2d 83, 88 (1986). Although Staton testified that he was led to believe there would be more work for him with the installation of the boiler and drying kiln, Tripp Josey testified that the boiler and drying kiln projects did not require a welder. Unlike the hopper, which was purchased second-hand from an auction, the boiler and drying kiln were purchased from the manufacturing companies and the purchase price included welding and

other installation work by the manufacturer. Thus, Staton's welding work would not have been needed on those projects. Staton also did not fill out any employment paperwork and Josey Lumber did not compile a personnel file on him as it did with all its employees.

Sixth, neither party presented any evidence indicating whether Staton would have been permitted to hire assistants to work on the project. Thus, this factor does not contribute to the analysis.

Finally, Staton selected his own time. Although Staton testified that he was not free to set his own hours, he did not punch in and out on a time clock as the rest of the Josey Lumber employees. He personally kept track of his own hours and reported them to either Joey or Tripp Josey. He did not work the normal operating hours of the mill, often starting work later in the day or working on the weekends. Unlike the full-time employees who worked regular hours regardless of the weather, Staton did not come to work if it was raining and arrived late if it was wet outside. Staton also sometimes stayed past the 4:00 p.m. closing time to finish welding. Indeed, Staton's fall and injury at issue in this case occurred around 4:20 p.m., after the mill closed for the day.

Taking all these factors into consideration, and considering the entire record in this case, we hold that Staton has not satisfied his burden of showing that he was an employee of Josey Lumber. Applying the *Hayes* factors, we conclude that Staton

was an independent contractor not subject to the provisions of the Workers' Compensation Act. Accordingly, the Industrial Commission lacked jurisdiction to hear his workers' compensation claim.[1]

## Conclusion

We hold that Staton failed to meet his burden of demonstrating that he was an employee of Josey Lumber and not an independent contractor. Because he was not an employee, the Industrial Commission lacked jurisdiction to hear his workers' compensation claim. Accordingly, we affirm the opinion and award of the Industrial Commission.

AFFIRMED.

Judges STEELMAN and INMAN concur.

Report per Rule 30(e).

---

[1] Staton also contends that the Industrial Commission improperly considered inadmissible testimony from Tripp Josey concerning the details of Staton's conversations with Tripp's father, Joey Josey. The Industrial Commission sustained Staton's objections to any such testimony by Tripp Josey and we do not consider that testimony in our *de novo* review of the jurisdictional facts.