***********
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before the Deputy Commissioner and the briefs and arguments of the parties. The appealing party has not shown good grounds to reconsider the evidence, receive further evidence, or rehear the parties or their representatives. Accordingly, the Full Commission affirms with minor modifications the Opinion and Award of former Deputy Commissioner Rideout. *Page 2 
 ***********
The Full Commission finds as fact and concludes as matters of law the following stipulations of the parties:
 STIPULATIONS
1. The date of the alleged injury which is the subject of this claim is October 10, 2006.
2. Edward Kirk d/b/a Kirk Contracting is insured by Liberty Mutual Insurance Company.
3. Plaintiff's medical records as outlined in the Medical Index, which is attached to the Pre-Trial Agreement, are stipulated into evidence, subject to the parties' right to depose the physicians.
4. All Industrial Commission Forms are stipulated into evidence.
5. In addition, the parties also submitted the following exhibits:
 a. Stipulated Exhibit 2 — Plaintiff's medical records
 b. Stipulated Exhibit 3 — North Carolina Industrial Commission Forms
 c. Stipulated Exhibit 4 — Certificate of Insurance
 d. Stipulated Exhibit 5 — Legal Memorandum submitted by counsel for Plaintiff
 e. Plaintiff's Exhibit 1 — Plaintiff's 2006 tax return
 f. Plaintiff's Exhibit 2 — Evelyn Duncan's Affidavit of December 15, 2008
 g. Plaintiff's Exhibit 3 — Steven Barfield's Affidavit of January 16, 2009
 h. Plaintiff's Exhibit 4 — Invoice from Ed Kirk, dated September 19, 2006 *Page 3 
 i. Plaintiff's Exhibit 5 — Check from Cap Care Group, Inc. to Ed Kirk, dated September 25, 2006
 ***********
Based upon all of the competent credible evidence of record, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing of this matter before the Deputy Commissioner, plaintiff was 43 years of age. He lives in Winston-Salem, North Carolina with two of his children and two grand children. He finished high school in 1985. He was discharged from the Navy after 30 days of basic training because of his low test scores in reading comprehension and math.
2. Plaintiff started working for the Defendant-Employer Edward Kirk, d/b/a Kirk Contracting, in approximately 2004. He worked for Kirk as a sign installer. This job involved climbing ladders and installing and removing vinyl signs on billboards. The billboards could be up to 100 feet high. The vinyl signs required lifting up to 50-60 pounds.
3. Plaintiff worked eight to ten hours per day, four to five days per week and some weekends for Kirk Contracting. Plaintiff was paid $10.00 per hour in cash by Kirk Contracting, with no taxes withheld from his wages. Kirk Contracting did not issue Plaintiff a W-2 wage statement or a 1099 Form.
4. Edward Kirk, the owner of Kirk Contracting, drove Plaintiff to and from work. Edward Kirk was most often at each job site with the Plaintiff. Kirk Contracting supplied all the equipment, tools, and supplies needed for the work on the billboards. These tools and supplies included, but were not limited to, ropes, harnesses, hard hats, ladders, and vests. *Page 4 
5. Plaintiff did not supply tools or supplies. He never personally paid for supplies, but he would on occasion go with Edward Kirk when he went to purchase supplies.
6. Edward Kirk supervised Plaintiff and other workers at the job sites, and he directed the work on the job. Plaintiff did not have the right to hire, to fire, or to bring help. Edward Kirk made the decisions in regards to hiring and firing. Edward Kirk employed up to five workers at a given time.
7. The Plaintiff did not operate his own business and specifically worked for Edward Kirk d/b/a Kirk Contracting as an employee on a regular basis. He was not an independent contractor.
8. Plaintiff suffered an injury by accident on October 10, 2006, when he was electrocuted with 7200 V.A.C. electricity while installing a billboard for Kirk Contracting directly adjacent to a Duke Energy power pole. On the date of the injury, Plaintiff was working for Edward Kirk in Madison, North Carolina on a billboard that was approximately 30-50 feet high. Edward Kirk was at the job site supervising the job. In addition to Plaintiff, there were two other employees at the job.
9. The billboard in question was a two-sided wooden sign with wooden support poles and no catwalk. There was an electrical power pole adjacent to the billboard with wires or cables over the top of the billboard. The Plaintiff did not know whether there was electricity running through the wires when they started the job.
10. Edward Kirk gave Plaintiff a hard hat and tools at the job site, and Plaintiff climbed the employer's ladder. The billboard was within arm length of the power pole, which had a box or transformer attached to it. The workers had to remove the old vinyl sign on the *Page 5 
billboard before the new sign could be installed. Edward Kirk instructed Plaintiff to begin removing the old vinyl sign.
11. Plaintiff began to remove the steel pole from the end of the vinyl sign, which was at the end of the billboard next to the power pole. He was sitting in a straddle position on the ledge of the billboard with his legs free since there was no catwalk. Plaintiff began removing the steel pole in an upward motion, and he was careful to avoid the power line over head. When he had pushed the pole up about eight to ten feet high and while he was looking down, the steel pole hit the live electrical wire, and Plaintiff was immediately electrocuted.
12. Plaintiff heard a popping noise, and he fell backwards. His right leg was trapped between the two sides of the billboard. Plaintiff saw his abdominal area on fire, and he began to scream. Plaintiff's body was on fire located just below his chest area down to his groin area. One of Plaintiff's co-workers put a coat over Plaintiff's body to put out the fire.
13. Emergency medical services were called to the accident scene, and a helicopter from Wake Forest Baptist Medical Center arrived. Plaintiff lost consciousness about the time he was placed in the helicopter to go to the hospital. Edward Kirk was a witness to the accident along with the two co-workers.
14. Plaintiff was transported by helicopter to Wake Forest University Baptist Medical Center where he was treated for a combination of both electrical injury and burn injury. He received the great majority of his treatment by Dr. Joseph Molnar and Dr. James Holmes at Wake Forest University Baptist Medical Center. His chief complaints on the date of his injury were considered to be burns and electrical shock. He sustained burns to the abdomen, genitalia, right lower extremity, right hip, right thigh, right knee, left upper extremity, and left hand. *Page 6 
15. Plaintiff was initially diagnosed as having twenty percent total body surface area flame and electrical burns. Dr. Holmes indicated that the injury was due to direct contact with high voltage electricity. Dr. Holmes also explained that the injury occurred at work while on top of a billboard and that Plaintiff was "shocked with 7200V electricity."
16. Plaintiff required inpatient care and treatment at the hospital for approximately two months before he was released on December 5, 2006.
17. Plaintiff had a long course of treatment while hospitalized with multiple surgical procedures required. He received treatment in the Burn Unit with initial debridement of his burns. His stay in the burn unit was complicated by prolonged respiratory failure, and he required mechanical ventilation.
18. Plaintiff also fell out of the bed during his stay in the Burn Unit and suffered a cardio-respiratory arrest, which required intubation, as well as a code blue procedure. He had multiple skin graft surgeries by Dr. Holmes for treatment of his burns.
19. Dr. Molnar provided a physical examination on Plaintiff within 24 hours of the injury. Plaintiff had swelling and numbness in his upper extremities consistent with electrical and burn injury. Dr. Molnar believed Plaintiff had nerve compressions as well as compartment syndrome.
20. On October 12, 2006, Dr. Molnar performed surgery, which involved multiple procedures including bilateral carpal tunnel releases, bilateral cubital tunnel releases, bilateral volar fasciotomies, right dorsal fasciotomy of the forearm, left thenar eminence fasciotomy. The fasciotomies involved making an incision and cutting into Plaintiff's skin and muscle to release the pressure in the tissues. *Page 7 
21. Dr. Molnar performed additional surgery on October 18, 2006, which involved closure of the upper extremity wounds, reexamination of the wounds, and delayed primary closure of the wounds made during the previous surgery. Plaintiff had extensive physical and occupational therapy while in the hospital.
22. After Plaintiff's discharge from the hospital, he continued to experience multiple medical problems, including numbness and weakness in his hands with a lot of pain in his upper extremities. Plaintiff had physical therapy for his numbness and tingling through Comp Rehab at Wake Forest Baptist Medical Center.
23. Plaintiff also had symptoms of coldness in his upper extremities. He had issues concerning short-term memory loss and concentration problems, which are consistent with an electrical type injury. Plaintiff also had loss of vision, and Dr. Molar referred him to the Department of Ophthalmology. The vision loss also is consistent with a high voltage electrical injury.
24. On May 12, 2008, Dr. Molnar referred Plaintiff for a cold stress test for evaluation of cold intolerance. The cold stress test measures the changes in blood flow. The results of the cold stress test demonstrated cool starting temperatures in both upper extremities with incomplete warming. Plaintiff had evidence of vasomotor instability, more pronounced on the right than on the left.
25. The cold stress test was an abnormal study showing lack of ability to respond in a normal fashion to maintain the proper blood flow to the hands. This cold intolerance condition is likely permanent due to Plaintiff's electrical injuries and will require ongoing medication management by a calcium channel blocker. *Page 8 
26. Plaintiff developed increased problems with numbness and tingling in his lower extremities in August of 2009. Dr. Molnar diagnosed him as having tarsal tunnel syndrome and posterior tibial nerve compression. Dr. Molnar opined that it was not uncommon in cases of electrical injuries to have presentation of increased numbness and tingling in an extremity some time after the initial injury.
27. Dr. Molnar believes the cause of the problems in Plaintiff's lower extremities was the electrical injury from the injury by accident. Dr. Molnar performed a tarsal tunnel release surgery on the left lower extremity on January 5, 2010. Dr. Molnar plans to perform a similar additional surgery for tarsal tunnel syndrome of the right leg as well.
28. Dr. Molnar opined to a reasonable degree of medical certainty that both the heat injury with the burns and the electrical injury were causally related to the injury sustained on October 10, 2006.
29. Dr. Molnar does not consider Plaintiff to be at maximum medical improvement. He believes Plaintiff will need additional treatment in the future and that Plaintiff will very likely require some medical treatment for his lifetime.
30. Dr. Molnar opined that to a reasonable degree of medical certainty the Plaintiff's electrical injury on October 10, 2006, caused his medical condition for which Dr. Molnar has provided treatment and the accident caused Plaintiff's present pain complaints in his upper and lower extremities.
31. Dr. Molnar testified that it would be very difficult if not impossible for Plaintiff to be capable of earning wages in employment since the date of the injury on October 10, 2006. He also said it is unlikely that Plaintiff will be able to return to substantial gainful employment in the future. *Page 9 
32. Plaintiff continues to have significant physical problems and has difficulty expressing himself verbally. He is slow in his speech and suffers from short-term memory loss.
33. Dr. Craig DuBois provided an independent medical evaluation on December 22, 2008. Dr. DuBois indicated that Plaintiff suffered a severe electrocution injury on October 2006. He believes Plaintiff's residual deficits and complaints are all consistent with electrical injuries. Mental testing showed mild cognitive deficits as well as problems with short-term memory and mild deficits with concentration.
34. Plaintiff has not returned to work or earned wages in employment since the date of the injury by accident on October 10, 2006. Plaintiff has not received workers' compensation benefits or other compensation since the injury by accident. Plaintiff's medical expenses are unpaid at this time.
35. The evidence supports that Plaintiff was an employee of Defendant-Employer Edward Kirk, d/b/a Kirk Contracting, and Plaintiff was not an independent contractor as argued by Defendants. Defendant-Employer Edward Kirk retained the right to control the details of the work.
36. The medical evidence shows that Plaintiff was completely incapable of work in any employment as a result of his work-related burn and electrical injuries from the date of the injury on October 10, 2006 to the present and continuing.
37. Plaintiff's average weekly wage was at least $400.00, which supports a weekly compensation rate of $266.68.
38. Plaintiff is entitled to temporary total disability compensation from October 10, 2006, to the present and continuing at the weekly compensation rate of $266.68. *Page 10 
39. Plaintiff is not able to work based upon his compensable burn and electrical injuries from the accident on October 10, 2006. Plaintiff's injuries were proximally caused by the work related accident, and Plaintiff has not returned to work for Defendant-Employer or for any other employer since his injury on October 10, 2006.
40. Plaintiff's past and future medical treatment reasonably related to his injury by accident on October 10, 2006, should be paid by the Defendants. The Commission hereby authorizes the treatment of his medical care providers, including, but not limited to, Wake Forest Baptist Medical Center, Wake Forest University Physicians, Dr. Molnar, and Dr. Holmes at the expense of the Defendants.
41. Plaintiff's counsel of record has provided valuable legal services in this matter. A reasonable attorney fee is twenty-five percent of the disability benefits awarded to Plaintiff pursuant to this Award.
 ***********
Based upon the foregoing Stipulations and Findings of Fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. The Industrial Commission has jurisdiction over Plaintiff's claim because Defendant-Employer Edward Kirk, d/b/a Kirk Contracting had three or more regular employees at the time of Plaintiff's injury and an employer-employee relationship existed at the time of Plaintiff's injury by accident on October 10, 2006. The Defendant-Employer Edward Kirk d/b/a Kirk Contracting retained the right to control and direct the manner in which the details of the work were to be executed. N.C. Gen. Stat. § 97-2(1);Carter v. Frank Shelton, Inc.,62 N.C. App. 378, 303 S.E.2d 184 (1983), cert. denied,310 N.C. 476, 312 S.E.2d 883 (1984). *Page 11 
2. The greater weight of the evidence shows that Plaintiff's average weekly wage was $400.00, which results in a weekly compensation rate of $266.68. N.C. Gen. Stat. § 97-2(5).
3. Plaintiff bears the burden of proving each and every element of compensability and degree of disability by the greater weight of the evidence. Plaintiff has carried his burden in this case on compensability and disability as to Defendant Edward Kirk d/b/a Kirk Contracting and its Carrier Liberty Mutual Insurance Company.Harvey v. Raleigh Police Department,96 N.C. App. 28, 284 S.E.2d 549, disc. rev. denied,326 N.C. 706, 388 S.E.2d 454 (1989).
4. In determining whether a claimant is an employee or an independent contractor, the following eight factors have been set forth to be considered:
 [W]hether the person employed is a) engaged in an independent business, calling, or occupation; b) is to have the independent use of his special skill, knowledge, or training in the execution of the work; c) is doing a specified piece of work at a fixed price or for a lump sum or upon a quantitative basis; d) is not subject to discharge because he adopts one method of doing the work rather than another; e) is not in the regular employ of the other contracting party; f) is free to use assistants as he may think proper; g) has full control over such assistants; and h) selects his own time.
McCown v. Hines,353 N.C. 683, 686-689, 549 S.E.2d 175, 177-179 (2001) (quotingHayes v. Board of Trustees of Elon College,224 N.C. 11, 15, 29 S.E.2d 137, 140 (1944)). Through the application of these factors, Plaintiff was not an independent contractor. The greater weight of the evidence shows that Plaintiff has met his burden of showing that he was an employee of Edward Kirk and that he was not an independent contractor.
5. The medical evidence establishes that Plaintiff has been temporarily totally disabled from October 10, 2006, to the present and continuing into the future, as a result of his compensable injury. Plaintiff is entitled to the payment of temporary total disability compensation by the Defendants at the compensation rate of $266.68 based upon his average *Page 12 
weekly wage of $400.00 from October 10, 2006, to the present and continuing into the future until further Order of the Commission. N.C. Gen. Stat. § 97-29.
6. Defendant-Employer Edward Kirk, d/b/a Kirk Contracting is responsible for payment of all of Plaintiff's past medical treatment reasonably related to his compensable injury by accident of October 10, 2006. N.C. Gen. Stat. § 97-25.
7. Plaintiff is not at maximum medical improvement at this time and requires ongoing medical treatment at the direction of Dr. Molnar and Dr. Holmes. There is also a substantial risk that Plaintiff will require future medical treatment due to the severity of his injuries. Plaintiff is entitled to have Defendant-Employer Edward Kirk, d/b/a Kirk Contracting pay all ongoing and future medical expenses related to Plaintiff's condition from the accident of October 10, 2006. This treatment will be provided by Dr. Molnar and Dr. Holmes and Wake Forest University Baptist Medical Center. N.C. Gen. Stat. § 97-25.1.
8. Plaintiff's counsel has provided valuable legal services and is entitled to an attorney fee of twenty-five percent of the disability benefits awarded to Plaintiff herein. N.C. Gen. Stat. § 97-90.
 ***********
Based upon the foregoing Stipulations, Findings of Fact, and Conclusions of Law, the Full Commission enters the following:
 AWARD
1. Defendant-Employer Edward Kirk, d/b/a Kirk Contracting shall pay Plaintiff, subject to the attorney fee awarded hereinafter, temporary total disability compensation at his weekly compensation rate of $266.68 from October 10, 2006, to the present and continuing into the future until further Order of the Commission. The amount of these benefits that are accrued *Page 13 
benefits for past due temporary total disability compensation is to be paid to the Plaintiff in a lump sum, subject to the attorney fee awarded hereinafter.
2. Defendant-Employer Edward Kirk, d/b/a Kirk Contracting shall pay for Plaintiff's past medical expenses related to his injury of October 10, 2006, when the same have been presented and approved for payment by the Industrial Commission in accordance with the Act and administrative regulation. Plaintiff's treatment by his medical care providers, including, but not limited to, his treating physicians for his burns and electrical injuries, Dr. Molnar and Dr. Holmes, are hereby approved and authorized.
3. Defendant-Employer Edward Kirk, d/b/a Kirk Contracting shall pay for Plaintiff's reasonable future medical expenses for his medical condition related to his injury of October 10, 2006, at the direction of Dr. Molnar and Dr. Holmes.
4. Plaintiff's counsel is hereby awarded an attorney fee of twenty-five percent of the disability benefits awarded to Plaintiff herein. Twenty-five percent of Plaintiff's past due temporary total disability benefits shall be forwarded directly to Plaintiff's counsel, and Plaintiff's counsel thereafter shall receive every fourth compensation check of Plaintiff in the future.
5. The Joint Motion to Dismiss of Defendants Lamar Advertising, Inc. and Zurich Insurance Company, and Cap Care Group and Builders Mutual Insurance Company, is hereby GRANTED as Plaintiff was an employee of Defendant-Employer Edward Kirk d/b/a Kirk Contracting and that Edward Kirk d/b/a Kirk Contracting and its Carrier, Liberty Mutual Insurance Company are liable for this compensable claim.
6. Defendant-Employer Edward Kirk, d/b/a Kirk Contracting shall pay the costs. *Page 14 
This is the 22nd day of November 2010.
 S/___________________
 STACI T. MEYER
 COMMISSIONER
CONCURRING:
S/___________________ BERNADINE S. BALLANCE COMMISSIONER
S/___________________ CHRISTOPHER SCOTT COMMISSIONER *Page 1